**CLARK, MIZE & LINVILLE, CHTD**
129 S. Eighth, P.O. Box 380
Salina, Kansas 67402-0380
785-823-6325 FAX 785-823-1868

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | | |
|---|---|---|---|
| LANCE FINLEY, | | ) | |
| | Plaintiff, | ) | |
| vs. | | ) | Case No. 6:17-CV-1215 |
| | | ) | |
| CITY OF COLBY, KANSAS; RON ALEXANDER | | ) | |
| and TOM NICKOLS, JR., | | ) | |
| | | ) | |
| | Defendants. | ) | |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Comes now Defendant Tom Nickols, Jr. (hereinafter "Nickols") by and through his attorneys of record, and submits the following Memorandum in Support of his Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     PLAINTIFF'S RELEVANT FACTUAL CONTENTIONS

1.     Plaintiff was employed as a police officer for the City of Colby, Kansas.  (ECF 1, ¶ 7).

2.     Defendant Nickols was, at the time, the undersheriff for Thomas County, Kansas. (ECF, ¶ 4).

3.     Plaintiff alleges that on January 15, 2016, he observed a deputy for the Thomas County Sheriff's Department, Jim Cousins, driving erratically and crossing the center line of the highway.  (ECF 1, ¶ 10).

4.     Plaintiff reported the alleged erratic driving to dispatch and to his superior, Colby Police Chief Ron Alexander.  (ECF 1, ¶ 11).

5.      On February 17, 2016, Chief Alexander told Plaintiff that he and others reviewed dashcam footage from Deputy Cousins' vehicle and determined that Deputy Cousins did not drive erratically on January 15, 2016.  (ECF 1, ¶ 13).

6.      Chief Alexander then advised Plaintiff that he would be terminated if he did not resign.  (ECF 1, ¶ 14).

7.      Plaintiff alleges that Nickols demanded that Chief Alexander terminate Plaintiff's employment.  (ECF 1, ¶ 15)[1].

8.      Plaintiff alleges that the motive for Nickols' demand was that Plaintiff's brother had made a complaint against Thomas County Sheriff Rod Taylor approximately five months earlier.  (ECF 1, ¶¶ 9 and 16).

9.      Plaintiff resigned on February 17, 2016.  (ECF 1, ¶ 17).

10.     Plaintiff alleges that on February 18, 2016, he requested to withdraw his resignation and that Chief Alexander denied his request.  (ECF 1, ¶ 18).

11.     Plaintiff alleges that Nickols' conduct violated the First and Fourteenth Amendments and Kansas common law.  (ECF 1, ¶ 21).

## II.     ARGUMENTS AND AUTHORITIES

### A.      12(b)(6) Standard

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court set forth the standards that courts must use in determining whether dismissal is warranted under Rule 12(b)(6). The Supreme Court held in accordance with Rule 8 of the Federal Rules of Civil Procedure that a complaint need not contain "heightened fact pleading of specifics," 550 U.S. at

---

[1] Defendant Nickols denies that he demanded that Chief Alexander terminate Plaintiff's employment and this fact is uncontested only for purposes of this Motion to Dismiss. Defendant Nickols reserves the right to contest each and every factual allegation in Plaintiff's Complaint in further proceedings, pleadings and motions.

570, or "detailed factual allegations," *id*. at 555 (citations omitted), but it must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The United States Court of Appeals for the Tenth Circuit has stated that *Twombly* imposes a "burden ... on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he ... is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The allegations [in the complaint] must be enough that, if assumed to be true, ... [Plaintiff] plausibly (not just speculatively) has a claim for relief [against Defendant]." *Id*. (footnote omitted).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[T]he *Twombly/Iqbal* standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). "[I]t demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678 (citations omitted), and more than "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' ...." *Kansas Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation". *Twombly*, 550 U.S. at 555. Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir.2007) (emphasis

in original). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.  Importantly, the Court should also consider alternative explanations for conduct when assessing the plausibility of a plaintiff's contentions.  (*See e.g. Iqbal* at 681-82 (finding that, as between an obvious alternative explanation and the discriminatory motive alleged by plaintiff – discrimination was not a plausible conclusion).

In this case, all of Plaintiff's claims against Defendant Nickols hinge on two alleged facts: (1) that Defendant Nickols "demanded" that Chief Alexander terminate Plaintiff's employment; and (2) that Defendant Nickols' motive for making this demand was that Plaintiff's brother had "a few months earlier raised concerns about unethical and illegal practices by the Thomas County Sheriff Rod Taylor" (ECF 1, ¶¶ 15-16).  The first fact is not supported by any evidence, but is arguably entitled to the assumption of truth at this stage of the proceedings.  The second fact, however, is clearly not.  It is nothing more than a conclusory allegation as to Nickols' motive and as such, it must not be assumed to be true.  The balance of Plaintiff's Complaint and allegations are woefully insufficient to support this contention or to "nudge it" across the line from conceivable to plausible, particularly in light of the obvious alternative explanation – that Plaintiff was terminated because his supervisor believed he made a report that was inconsistent with the video evidence (ECF 1, ¶ 13).  As discussed in more detail below, none of Plaintiff's claims meet the plausibility standards set forth in *Twombly/Iqbal* and all claims against Defendant Nickols must be dismissed.

### B.    First Amendment Claim

Public employees enjoy First Amendment rights, but not to the same extent as a private citizens. *Seifert v. Unified Gov't of Wyandotte Cty.*, 779 F.3d 1141, 1151 (10th Cir. 2015). "Because government employers, like private employers, need a significant degree of control over their employees' words and actions, not every restriction on a public employee's speech amounts to a deprivation of First Amendment rights." *Seifert*, 779 F.3d at 1151 (citation, brackets, and internal quotation marks omitted).

"The familiar *Garcetti/Pickering* analysis governs First Amendment retaliation claims." *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1367 (10th Cir. 2015) (internal quotation marks omitted); *see Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Under this analysis, we consider:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interest, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Helget v. City of Hays*, 844 F.3d 1216, 1221 (10th Cir. 2017) (internal quotation marks omitted).

It is well-established that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Seifert*, 779 F.3d at 1151.  Courts are to take "a practical view of all the facts and circumstances surrounding the speech and the employment relationship" and "a broad view of the meaning of speech that is pursuant to an employee's official duties." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708,

713 (10th Cir. 2010). Although "no one factor is dispositive," our "guiding principle is that speech is made pursuant to official duties if it involves 'the type of activities that the employee was paid to do.' " *Id.* (brackets omitted) (quoting *Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007)).  Further, the Tenth Circuit has "noted that implicit in the *Garcetti/Pickering* test is a requirement that the public *employer* have taken some adverse *employment action* against the *employee*." *Couch v. Bd. of Trustees of Mem. Hosp. of Carbon County,* 587 F.3d 1223, 1235–36 (10th Cir.2009) (emphasis added).

In the present case, Plaintiff has not pled sufficient facts to support a First Amendment claim against Defendant Nickols.  First, Plaintiff worked for the Colby Police Department, while Defendant Nickols was the undersheriff for Thomas County.  He was not Plaintiff's employer and there is no indication that he had any control or influence over Plaintiff's job status at the Police Department or that his "demand" had any impact on the decision to terminate Plaintiff's employment.  The bare allegation that Nickols "demanded" that Plaintiff be terminated is not sufficient to support a First Amendment retaliation claim where there is no evidence to support an inference that Nickols' opinions, suggestions or demands carried any weight with an agency over which he had no control or authority.

Second, Plaintiff's Complaint fails to establish that his resignation or termination had anything to do with "protected speech".  Plaintiff's contact with dispatch and his superior to report erratic driving is clearly not protected speech.  Plaintiff, a police officer, had an official duty to report violations of the law, whether on duty or off.  Further, a police officer internally reporting erratic driving to dispatch and his supervisor can hardly be said to be a matter of public concern.

Similarly, Plaintiff's Complaint fails to allege sufficient facts to support a First Amendment claim based upon a letter written by his brother.  There are no facts alleged in the Complaint from

which the Court can reasonably infer that Plaintiff's termination had anything to do with a letter

his brother wrote five months earlier complaining about the Sheriff. This is a textbook example

of an allegation that does not cross the threshold from speculative to plausible. This is particularly

true in light of the alternative explanation – that Plaintiff was terminated for making a report that

his supervisor found to be, at best, inconsistent with the evidence and at worst, fabricated. For

the above reasons, Plaintiff's First Amendment claim against Nickols must be dismissed.

### C.      Fourteenth Amendment Claim

The Fourteenth Amendment protects individuals from deprivations of "life, liberty, or

property, without due process of law." U.S. Const. Amend. XIV. In examining a plaintiff's claim

that he or she has suffered such a deprivation, a court first determines whether the individual had

a protected interest under the Due Process Clause. *See, e.g., Watson v. University of Utah Med.

Ctr.,* 75 F.3d 569, 577 (10th Cir.1996). If so, the court then examines whether in being deprived

of that interest, the plaintiff received an appropriate level of procedural due process. *See id.*

To assert a constitutional Due Process claim under 42 U.S.C. § 1983 for deprivation of

property, an employee must show that he was deprived of a property interest that is protected by

the Fourteenth Amendment. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33

L.Ed.2d 548 (1972). The Supreme Court has explained that "[p]roperty interests, of course, are

not created by the Constitution. Rather they are created and their dimensions are defined by

existing rules or understandings that stem from an independent source such as state law." *Roth,* 408

U.S. at 577. "[P]ublic employees have a property interest in continued employment if contractual

or statutory provisions guarantee continued employment absent 'sufficient cause' for

discharge." *Lucas v. Murray City,* 949 P.2d 746, 752 (Utah Ct.App.1997) (citing *Roth,* 408 U.S.

at 576–78). In order to create such a property interest, a state statute or regulation must give the

recipient "a legitimate claim of entitlement to [the benefit]," *Roth,* 408 U.S. at 577, in this case, the claimed benefit of continued employment.

A property interest is more than a unilateral expectation, it must be based upon a legitimate claim of entitlement founded upon state law. *Id.* An employment contract providing for tenure, or an implied contract based on rules or mutually explicit understandings, may support a claim of entitlement to a benefit. *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). Under Kansas law, employment is "at-will" unless there is an express, negotiated duration of employment. *Owens v. City of Derby, Kan.*, 586 F. Supp. 37, 40 (D. Kan. 1984)(citing *May v. Sante Fe Transportation Co.,* 189 Kan. 419, 370 P.2d 390 (1962). Under the traditional concept of at-will employment, the employer is vested with the right to discharge an employee at any time and for any reason and thus the at-will employee does not have a constitutionally protected property interest in his employment. *Id. See also Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1136 (10th Cir. 1994). A plaintiff cannot allege a violation of either procedural or substantive due process if he does not first show that he had a protected property right. *Potts v. Davis County,* 551 F.3d 1188, 1192 (10th Cir.2009).

Also under the Fourteenth Amendment, "[a] public employee has a liberty interest in his good name and reputation as they relate to his continued employment." *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014). "The government infringes upon that interest when: (1) it makes a statement that impugns the good name, reputation, honor, or integrity of the employee; (2) the statement is false; (3) the statement is made during the course of termination *and* forecloses other employment opportunities; and (4) the statement is published, in other words disclosed publicly." *Id.* (brackets, footnote, and internal quotation marks omitted). "These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest." *Workman v.*

*Jordan,* 32 F.3d 475, 481 (10th Cir. 1994).   Further, reputational damage standing alone is insufficient unless the discharge explicitly states the stigmatizing factor or implicitly ratifies some other stigmatizing allegation. *McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir.1981).

In this case, Plaintiff's Complaint fails to allege sufficient facts to state a claim against Defendant Nickols under the Fourteenth Amendment.   As with Plaintiff's other claims, the Complaint does not contain sufficient facts from which the Court can infer that Nickols' had any authority over Plaintiff's job status or that Nickols' actions or statements had any impact on Chief Alexander's decision to terminate his employment.

Even if such an inference were plausible, Plaintiff has pointed to no external source giving him a constitutionally protected property interest in his job as a police officer.   Nor has Plaintiff alleged sufficient facts from which the Court can infer that Nickols made statements "sufficiently stigmatizing" during the course of his termination to raise Fourteenth Amendment concerns.   *See Ellison v. Roosevelt Cty. Bd. of Cty. Commissioners*, No. 16-2270, 2017 WL 2963382, at *6 (10th Cir. July 12, 2017) (finding that accusations by supervisor, including that that the officer's police report was inconsistent with video evidence, was not sufficiently stigmatizing to implicate the Fourteenth Amendment).   Finally, there is no evidence or suggestion that any statements made by Nickols were published or publicly disclosed so as to implicate the Fourteenth Amendment.   For the above reasons, Plaintiff's claims against Defendant Nickols under the Fourteenth Amendment must be dismissed.

**D.      Plaintiff's Claims Against Nickols are Barred by Qualified Immunity**

Individuals sued under 42 U.S.C. 1983 enjoy qualified immunity. Qualified immunity protects public officials performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.

*Anderson v. Willis*, 917 F. Supp 2d 1190, 1195 (D. Kan. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law". *Malley v. Briggs*, 475 U. S. 335, 341 (1986). "The key to this inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken." *Thompson v. City of Kansas City*, 1994 U.S. Dist LEXIS 14345 (citing *Laidley v. McClain* 914 F.2d 1386, 1394 (10th Cir.1990)).

The qualified immunity defense may be raised by a Rule 12(b)(6) motion to dismiss, and "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996). Courts should resolve the purely legal question raised by a qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001).

Once a qualified immunity defense is asserted, the burden shifts to the plaintiff to meet a two part test. *Saucier v. Katz,* 533 U.S. 194, 201(2001); *Green v. Post,* 574 F.3d 1294, 1300 (10th Cir. 2009.) A plaintiff must show that his constitutional right was infringed, and that such right was clearly established at the time of the alleged infringement. Although a plaintiff must establish both elements, the Court may consider the elements in any order. *Pearson v. Callahan*, 555 U.S. 194, 223 (2009.)

First, a plaintiff must establish that the defendant violated a constitutional right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). If the plaintiff fails to satisfy this initial requirement, the court's inquiry ends. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007), ("If no constitutional right would have been violated were the allegations established, there is no

necessity for further inquiries concerning qualified immunity.") (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Second, if the plaintiff establishes that a constitutional right was violated, then the plaintiff must also show that the violated right was clearly established. *Cortez*, 478 F.3d at 1114. Whether the right was clearly established is examined under the "specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation. *Long v. Fulmer*, 545 F. App'x 757, 761 (10th Cir. 2013). Thus, if reasonable officers would not have been aware of the clearly unlawful nature of their actions, qualified immunity applies and dismissal is appropriate.

For a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." *Cortez*, 478 F.3d at 1114⁻15 (citing *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). This does not require a plaintiff to cite a case holding that the specific conduct at issue is unlawful, but rather plaintiff must show that the unlawfulness of the action was apparent. *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005).

There is a presumption in favor of qualified immunity for public officials acting in their individual capacities, unless the plaintiff proves otherwise. *See Hidahl v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991). When it is debatable whether a violation has occurred, the law by definition cannot be clearly established, and qualified immunity applies. *See Reichle*, 132 S. Ct. at 2096 (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999).

For the reasons articulated above, Plaintiff's Complaint fails to state any plausible constitutional claims against Defendant Nickols.  Even if Plaintiff established a plausible

constitutional claim, it is highly unlikely that Plaintiff will be able to cite a single case from the Supreme Court or Tenth Circuit in which a constitutional violation was found based upon conduct similar to that alleged against Nickols in his Complaint. Defendant Nickols has been unable to find any such cases in his review. Because it is not "clearly established" that any of Nickols' alleged conduct violated Plaintiff's constitutional rights, Defendant Nickols is entitled to qualified immunity.

E.      State Law Claims

Plaintiff's Complaint generically alleges that Nickols' conduct violated Kansas common law, including "tortious interference" (ECF 1, ¶ 21). As noted above, the only conduct attributed to Nickols in Plaintiff's Complaint is that he allegedly "demanded" that Chief Alexander terminate Plaintiff's employment. Even if the Court accepts this allegation as true, Plaintiff's state law claim/s still must be dismissed as a matter of law.

First, the allegation that Nickols' demanded Plaintiff be terminated from his job as a city police officer falls well short of establishing a plausible claim for tortious interference or any similar common law cause of action recognized in Kansas. The elements of tortious interference with a business relationship are: (1) the existence of a business relationship; (2) knowledge of the relationship by the defendant; (3) a reasonable certainty that, except for the conduct of the defendant, plaintiff would have continued the relationship; (4) intentional misconduct by defendant; and (5) incurrence of damages by plaintiff as a direct or proximate result of defendant's misconduct. *Cohen v. Battaglia*, 296 Kan. 542, 293 P.3d 752 (2013). As previously stated, Plaintiff's Complaint fails to allege sufficient facts from which the Court can reasonably infer that Nickols' conduct had an effect on Chief Alexander's decision to terminate Plaintiff (or request his resignation). Nor can the Court reasonably infer that Nickols' motive was a letter Plaintiff's

brother wrote five-months prior to Plaintiff's termination.  Plaintiff's own Complaint suggests a much more plausible explanation - that he was terminated because his supervisor believed he made a report that was inconsistent with the video evidence

Further, Plaintiff's state law claims are barred by the Kansas Tort Claims Act. A government employee acting within the scope of his employment is not liable for damages resulting from the exercise or performance of a discretionary function or duty, whether or not the discretion is abused, and regardless of the level of discretion involved.   K.S.A. 75-6104(e). The term "employee" includes "any ... elected or appointed officials and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation." K.S.A. 75–6102(d).  Even if the Court accepts as true that Nickols' demanded that Chief Alexander terminate Plaintiff's employment – such a demand clearly falls within the discretionary function exception of the Kansas Tort Claims Act.  *See Clark v. City of Kansas City, Kan.*, No. CIV. A. 88-2583-O, 1989 WL 156799, at *3 (D. Kan. Nov. 28, 1989)(holding that councilmembers' vote to require association to terminate plaintiff's employment or else face termination of association's contract with city fell within discretionary exception of the KTCA).

## III.    CONCLUSION

Plaintiff's claims against Defendant Nickols hinge on the conclusory allegation that he "demanded" Plaintiff's employment be terminated because of a letter Plaintiff's brother wrote five-months earlier complaining about the Sheriff.  The Court should not and must not assume this allegation to be true.  The Complaint and the allegations therein are insufficient to support this contention or to "nudge it" across the line from conceivable to plausible, particularly in light of the obvious alternative explanation – that Plaintiff was terminated because his supervisor believed he made a report that was inconsistent with the video evidence, as Plaintiff acknowledges was the

reason provided to him by his supervisor.  For the above and foregoing reasons, Plaintiff's claims

against Tom Nickols, Jr. must be dismissed.

> Respectfully submitted,
>
> /s/ Jared T. Hiatt
> Jared T. Hiatt          KS 23526
> Peter S. Johnston       KS 18398
> CLARK, MIZE & LINVILLE, CHARTERED
> 129 South 8th Street, POB 380
> Salina, Kansas  67402-0380
> 785-823-6325 Tel. | 785-823-1868 Fax
> jthiatt@cml-law.com Email
> psjohnston@cml-law.com Email
> Attorneys for Tom Nickols, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29th day of September, 2017, I presented the above and foregoing ***Memorandum in Support of Motion to Dismiss*** to the clerk of the court for filing and uploading to the e-flex electronic court filing system.

> /s/ Jared T. Hiatt
> Jared T. Hiatt          KS 23526