**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LANCE FINLEY

        *Plaintiff,*

  vs.

CITY OF COLBY, KANSAS, RON
ALEXANDER, and TOM NICKOLS, JR.,

      *Defendants.*

Case No. 17-cv-1215-EFM

## MEMORANDUM AND ORDER

This case arises out of Plaintiff Lance Finley's termination from the Colby Policy Department in February 2016. Plaintiff brings claims under the First Amendment and Kansas common law against Defendant Tom Nickols, Jr., the Undersheriff of Thomas County, Kansas, at the time Plaintiff's employment with the City of Colby terminated; Defendant Ron Alexander, the Chief of Policy of Colby, Kansas, at all relevant times; and Defendant City of Colby, Kansas. This matter comes before the Court on Defendants' various motions for judgment on the pleadings (Docs. 31, 32, 49 and 54). For the reasons stated below, the Court grants Undersheriff Nickols' Motion for Judgment on the Pleadings (Doc. 54), grants in part and denies in part Chief Alexander and the City of Colby's Motion for Judgment on the Pleadings (Doc. 49), and denies as moot Defendants' remaining motions (Docs. 31 and 32).

# I.    Factual and Procedural Background[1]

Plaintiff worked as an officer with the Colby Police Department from approximately August 2013, until his termination on February 18, 2016.[2]  At all times relevant to the allegations in this lawsuit, Defendant Alexander has been the Chief of Police of Colby, Kansas.  Colby is a city in Thomas County, Kansas.

Plaintiff's brother, Marc Finley, worked for the Thomas County Sheriff's Office until his termination on an undisclosed date.  In September 2015, while employed as the Undersheriff for the Thomas County Sheriff's Office, Marc Finley submitted a seven-page letter to the Kansas Bureau of Investigation, the Attorney General, the Kansas Commission on Peace Officers' Standard and Training (KS CPOST), and the Board of County Commissioners of Thomas County, Kansas.  The letter alleged numerous misdeeds by the Thomas County Sheriff, Rod Taylor, including drinking on the job, theft, sexual harassment, destruction of evidence, and abuse of power.  Chief Alexander knew of Marc Finley's grievance.

In November 2015, Plaintiff pulled over Jim Cousins, an employee of the Thomas County Sheriff's Office, for driving his truck on a public roadway with snow covering a large portion of the windshield.  Chief Alexander and Richard Barrett[3] told Plaintiff that he could not issue a ticket to Cousins because of politics.  On January 15, 2016, while off duty, Plaintiff observed Cousins

---

[1] The Court accepts the factual allegations in Plaintiff's Second Amended Complaint as true for purposes of this motion, and views the facts in the light most favorable to Plaintiff.

[2] Plaintiff's Second Amended Complaint alleges that he was told he would be fired if he did not resign and that Plaintiff originally agreed to resign his employment.  Plaintiff refers to his separation as a termination; accordingly, the Court will do the same here.

[3] Plaintiff's Second Amended Complaint does not identify Barrett's position or his connection to this case.

driving a vehicle erratically by crossing the center line on the road. Plaintiff reported the erratic driving to dispatch, Chief Alexander, and Thomas County Attorney Kevin Berens.

At approximately 7:00 a.m. on February 17, 2016, Chief Alexander told Plaintiff that he and others had reviewed the dashcam footage from Cousins' vehicle and determined that Cousins did not cross the center line on January 15, 2016. Chief Alexander told Plaintiff that he could be charged with filing a false police report and that Plaintiff's employment would be terminated if he did not resign. Chief Alexander explained to Plaintiff that the decision to terminate his employment was "political." Plaintiff agreed to resign his employment. Later that day, Plaintiff texted Chief Alexander and said: "This morning when you confronted me about your concerns, I had not had a chance to sleep, and as a result I have been unable to sleep yet I will meet with you tomorrow after I have been afforded the chance to sleep and process the allegations made against me." In response, Defendant Alexander said: "Thats [sic] fine. After speakinv [sic] with Tom I dont [sic] believe anyone will be seaking [sic] to file a case."

On February 18, Plaintiff attempted to withdraw his resignation and Chief Alexander told Plaintiff that his employment would be terminated regardless. Chief Alexander also stated that he forced Plaintiff's termination to save Plaintiff from being charged criminally by Undersheriff Nickols, and that Plaintiff could blame his separation on the "idiot Chief Ron Alexander" and "politics." Plaintiff alleges that Chief Alexander later admitted that he did not know whether Cousins' vehicle ever crossed the center line on January 15, 2016.

Defendant Tom Nickols was the Undersheriff in Thomas County at the time of Plaintiff's complaint regarding Cousins and at the time of Plaintiff's termination. In his Second Amended Complaint, Plaintiff alleges: "Defendant Nickols did this because of [sic] Plaintiff's brother is Marc Finley, who a few months earlier had raised concerns about unethical and illegal practices

by Thomas County Sheriff Rod Taylor, and because Plaintiff had reported Jim Cousins' driving to law enforcement." Plaintiff's Second Amended Complaint does not identify what the word "this" in the above allegation refers to. In his original Complaint, as well as in his response to Defendants' motions to dismiss, Plaintiff alleges that Undersheriff Nickols demanded that Chief Alexander and the City of Colby terminate Plaintiff's employment.

Plaintiff filed this action on August 22, 2017. He claims that Chief Alexander, the City of Colby, and Undersheriff Nickols violated the First Amendment of the U.S. Constitution, Kansas public policy, and Kansas common law, and that Undersheriff Nickols committed tortious interference. After Plaintiff filed his first Amended Complaint, Defendants sought dismissal of Plaintiff's Amended Complaint (Docs. 31 and 32).[4] Plaintiff subsequently filed a Second Amended Complaint, and Defendants again filed motions for judgment on the pleadings. Plaintiff filed a combined response to Undersheriff Nickols and Chief Alexander and the City of Colby's motions for judgment on the pleadings.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough not to delay trial.[5] The standard for dismissal under Rule 12(c) is the same as the standard for dismissal under Rule 12(b)(6).[6] Accordingly, to survive a motion for judgment on the pleadings, a complaint must

---

[4] Defendants' motions for judgment on the pleadings filed before Plaintiff filed his Second Amended Complaint are moot. Accordingly, the Court substantively addresses only the motions for judgment on the pleadings filed in response to Plaintiff's Second Amended Complaint.

[5] Fed. R. Civ. P. 12(c).

[6] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013); *KMMentor, LLC v. Knowledge Mgmt. Prof'l Soc., Inc.*, 712 F. Supp. 2d 1222, 1231 (D. Kan. 2010).

present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[7] All reasonable inferences from the pleadings are granted in favor of the non-moving party.[8] Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[9]

When a complaint includes exhibits, the Court may "consider not only the complaint itself, but also attached exhibits."[10] If the complaint refers to a document, but does not include it as an exhibit, the Court may consider a copy of the document provided by the defendant if the plaintiff does not dispute the document's authenticity and the document is central to the plaintiff's claims.[11] The Tenth Circuit recently approved the consideration of a video of events described in a plaintiff's complaint in deciding a motion to dismiss, and noted that it would accept as true the plaintiff's allegations "except when directly contradicted by . . . the video of the incident."[12]

## III.  Analysis

### A.  Chief Alexander and the City of Colby's Motion for Judgment on the Pleadings

#### 1.  First Amendment Retaliation

"Public employees do not surrender all their First Amendment rights by reason of their employment.  Rather, the First Amendment protects a public employee's right, in certain

---

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

[8] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012).

[9] *Id.* (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

[10] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

[11] *Id.*; *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997).

[12] *Estate of Ronquillo by & through Estate of Sanchez v. City & Cty. of Denver*, 720 F. App'x 434, 437 (10th Cir. 2017).

circumstances, to speak as a citizen addressing matters of public concern."[13]  The Court evaluates

First Amendment retaliation claims in the employment context under the framework derived from

the U.S. Supreme Court's decisions in *Garcetti* and *Pickering v. Board of Education*.[14]  The

*Garcetti/Pickering* test includes five elements:

1. The protected speech was not made pursuant to an employee's official duties.

2. The protected speech addressed a matter of public concern.

3. The government's interests as an employer did not outweigh the employee's free-speech interests.

4. The protected speech was a motivating factor in the adverse employment action.

5. The defendant would not have made the same employment decision in the absence of the protected speech.[15]

Generally, the first three inquiries are questions of law for the Court, whereas the last two inquiries

involve questions of fact for the jury.[16]

Plaintiff rests his First Amendment retaliation claim on two alleged incidents of protected

conduct: (1) the grievance submitted by Marc Finley, Plaintiff's brother, regarding the Thomas

County Sheriff and (2) his own report of unlawful conduct by Cousins, an employee of the Thomas

County Sheriff's Office.  Defendants argue that Marc Finley's allegedly protected speech cannot

form the basis of Plaintiff's First Amendment retaliation claim, and, regardless, that Plaintiff has

---

[13] *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (citations omitted).

[14] 391 U.S. 563 (1968).

[15] *Lincoln v. Maketa*, 880 F.3d 533, 538 (10th Cir. 2018) (citation omitted).

[16] *Deutsch v. Jordan*, 618 F.3d 1093, 1098 (10th Cir. 2010) (recognizing that although the first three questions are legal in nature, resolution of these inquiries may turn on a factual dispute appropriate for the jury, such as deciding precisely what the plaintiff said; likewise, there may not be a genuine issue of fact for the jury to resolve on the last two inquiries).

failed to adequately plead facts sufficient to satisfy the fourth and fifth elements of his claim. Defendants also assert that Plaintiff has not stated a claim with regard to his report of Cousins' alleged erratic driving because he has failed to satisfy all but the first element of the *Garcetti/Pickering* test.[17]

a. Marc Finley's complaint regarding the Thomas County Sheriff

Standing serves as a threshold inquiry and jurisdictional prerequisite to suit—if a plaintiff does not have standing to pursue his claims, the Court does not have jurisdiction to hear the claims. Accordingly, before reaching the merits of Defendants' motion, the Court must first determine whether Plaintiff has standing to pursue a claim based on his brother's allegedly protected activity.

The Supreme Court's standing jurisprudence includes two strands of standing: (1) Article III standing and (2) prudential standing.[18] Prudential standing "encompasses various limitations, including 'the general prohibition on a litigant's raising another person's legal rights,'" and embodies the general principle that a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."[19]

When analyzing whether a plaintiff may pursue a First Amendment retaliation claim based on the protected speech of a third party—as opposed to the plaintiff's own speech—Courts require the plaintiff to demonstrate (1) that he suffered an injury, (2) a close relationship exists between the plaintiff and the third party who possessed the First Amendment rights, and (3) "some

---

[17] Although Defendants do not affirmatively concede the first element, they do not contest whether Plaintiff has satisfied it.

[18] *The Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1168 (10th Cir. 2011). Article III standing requires the plaintiff to have suffered an "injury in fact" that a favorable judgment will redress. *Id.*

[19] *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Warth v. Seldin*, 422 U.S. 490, 499 (1975)) (internal quotation marks omitted from second quotation).

hindrance to the third party's ability to protect his or her own interests."[20]  Assuming that Plaintiff

satisfies the first two elements—that he suffered an injury and that he has a close relationship with

his brother—he nevertheless lacks standing because he cannot satisfy the third requirement.

Nothing appears to have prevented Marc Finley from protecting his own interests.  Indeed, Marc

Finely filed a lawsuit against Thomas County, Sheriff Rod Taylor, and Undersheriff Nickols

alleging First Amendment retaliation based on his allegedly protected criticisms of Sheriff

Taylor.[21]

   Further, to the extent Plaintiff seeks to pursue violations of his right to familial association,

his claim fails.  "The Tenth Circuit has repeatedly recognized the right to familial association as a

'liberty interest' protected by the Due Process Clause of the Fourteenth Amendment, not the First

Amendment."[22]  Plaintiff has not pleaded facts sufficient to state a claim for violations of his right

to familial association,[23] and does not have standing to bring a First Amendment retaliation claim

---

[20] *Payton v. Marlette*, 2013 WL 3147661, at *3-4 (D. Kan. 2013) (quoting *Campbell v. Louisiana*, 532 U.S. 392, 397 (1998)) (analyzing standing where the plaintiff alleged that defendants retaliated against him by denying an employment opportunity after his daughter wrote a letter to a Kansas senator, and concluding that even if Plaintiff could establish a First Amendment violation, the defendants were entitled to qualified immunity under the clearly-established prong).  *See also Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 403-04 (6th Cir. 2017) (concluding that the plaintiff could not pursue a claim based on his father's speech where his father was not prevented from raising his own claims); *Huth v. Haslun*, 598 F.3d 70, 75 (2d Cir. 2010) (applying same elements and concluding that the plaintiff did not have third-party standing); *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) (applying the same factors and concluding the plaintiff did not have standing to assert First Amendment retaliation claim based on third-party's speech); *Wasson v. Sonoma Cty. Junior Coll.*, 203 F.3d 659, 662 (9th Cir. 2000) (noting that a "First Amendment retaliation claim is not a wrongful termination claim," and holding that plaintiff did not have a First Amendment retaliation claim when she was retaliated against for someone else's speech and that she did not have third-party standing to maintain her action as defending the First Amendment rights of the author of certain letters).

[21] *See Finely v. Thomas Cty.*, Doc. 1, No. 17-1151 (D. Kan. 2017).

[22] *Moral v. Hagen*, 2013 WL 1660484, at *10 (D. Kan. 2013) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-22 (1984); *Lowery v. Cty. of Riley*, 522 F.3d 1086, 1092 (10th Cir. 2008); *J.B. v. Washington Cty.*, 127 F.3d 919, 927 (10th Cir. 1997); *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993); *Trujillo v. Bd. of Cty. Comm'rs*, 768 F.2d 1186, 1189-90, 1190 n.7 (10th Cir. 1985)).

[23] *See, e.g.*, *Trujilo*, 768 F.2d at 1190 (concluding "that an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim" and holding that plaintiffs mother and sister failed to allege intent on defendants' part to deprive them of their protected relationship with their

based on his brother's allegedly protected speech. Accordingly, Plaintiff may not rely on his brother's speech to pursue a First Amendment retaliation claim.

### b. Complaint regarding Cousins

Defendants allege that Plaintiff fails to state a claim for First Amendment retaliation based on his report of Cousins' erratic driving because he cannot satisfy the second, third, fourth, or fifth elements of his claim.

### i. Matter of public concern

The entirety of Defendants' brief on this issue states, without legal citation: "A report of a driver allegedly crossing the centerline once is not a matter of public concern. It was an internal report to the Plaintiff's employer, not regarding a matter of public concern. Thus, plaintiff has not engaged in any protected activity." The Court disagrees.

When analyzing whether speech touches on a matter of public concern, the Court looks "to the content, form, and context of an employee's statement to determine if it pertains to a matter of public concern."[24] The Tenth Circuit has "held that statements revealing official impropriety usually involve matters of public concern."[25] Further, the fact that a plaintiff selects "a private

---

son/brother); *Griffin*, 983 F.2d at 1547 (noting that the familial right of association is a substantive due process right and concluding that not every "act that *results* in an interference with the rights of intimate association is actionable," and "to rise to the level of a constitutional claim, the defendant must *direct* his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship") (emphases in original); *Moody*, 847 F.3d at 403-04 (noting that plaintiff "never asserted in his complaint that he was retaliated against for constitutional association with his father or that his relationship with his father was impaired due to the Defendants' actions").

[24] *Baca v. Sklar*, 398 F.3d 1210, 1219 (10th Cir. 2005) (citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).

[25] *Id*. (citing *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224-25 (10th Cir. 2000)); *see also Deutsch*, 618 F.3d at 1100 (noting that speech disclosing "any evidence of corruption, impropriety, or other malfeasance on the part of city officials clearly concerns matters of public import") (quotation omitted); *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1202 (10th Cir. 1998) ("Although speech related to internal personnel disputes ordinarily does not involve public concern, 'speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of

forum within the police department and the district attorney's office, rather than a public forum, does not remove the speech from First Amendment protection."[26]

Here, Plaintiff did not simply report "a driver," but rather, reported erratic driving by an officer charged with upholding the law. The Tenth Circuit has noted that "any" evidence of impropriety or malfeasance by government officials "clearly concerns matters of public import," and the Court agrees with Plaintiff that reporting erratic and dangerous driving by an officer in his police vehicle addresses a matter of public concern. Further, that Plaintiff reported the matter "internally" does not preclude his claim.[27]

ii.     The parties' respective interests

Even if a public employee speaks as a citizen on a matter of public concern, his First Amendment claim may fail if the government has " 'an adequate justification for treating the employee differently from any other member of the public' based on the government's needs as an employer."[28] "The only public employer interest that outweighs the employee's free speech interest is avoiding direct disruption, *by the speech itself*, of the public employer's internal operations and employment relationships."[29] The Court does not consider the parties' respective interests in a "vacuum," but rather, considers "the manner, time, and place of the employee's

---

city officials . . . clearly concerns matters of public import.' ") (quoting *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988)) (alteration in original).

[26] *Dill*, 155 F.3d at 1202.

[27] *See id.*

[28] *Helget v. City of Hays*, 844 F.3d 1216, 1222 (10th Cir. 2017) (quoting *Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014)).

[29] *Id.* (quotation marks and quotation omitted) (emphasis in original).

expression."[30]  Pertinent factors to consider when weighing the parties' interests include whether Plaintiff's statement: (1) "impairs discipline by superiors or harmony among coworkers," (2) detrimentally impacts "close working relationships for which personal loyalty and confidence are necessary," or (3) "impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."[31]

Defendants argue that a county sheriff's office and a city police department in the county seat often have to rely upon each other for backup and support in dangerous situations when the lives of officers may be at stake.  Accordingly, they argue, a good working relationship is essential and allegations of illegal activity that are reasonably seen to be false raise grave questions about Plaintiff's ability to maintain a close working relationship.

Defendants' argument starts from the premise that Chief Alexander reasonably concluded Plaintiff's report was false.  But the Court cannot accept this premise as true at this stage in the litigation.[32]  Defendants incorrectly state that "Plaintiff's Complaint on its face alleges that Chief Alexander reviewed the dashcam video and concluded that it did not show what the Plaintiff had reported."  Plaintiff's Second Amended Complaint alleges that "Defendant Alexander *told* Plaintiff he and others had reviewed dashcam footage . . . and determined that Mr. Cousins did not cross the center line on January 15, 2016."  It continues to allege that "Defendant Alexander has

---

[30] *Id*. (quotations omitted).

[31] *Id*. (quotation omitted).  The Tenth Circuit recognizes that "loyalty and confidence among employees is especially important in a law enforcement setting."  *Id.* at 1223.

[32] Defendants submit an audio recording of the alleged phone call between Plaintiff and dispatch as well as the alleged dashcam footage of Cousin's vehicle.  Even accepting Defendants' proffer of what the audio/video recordings show, this does not establish what Chief Alexander had or had not reviewed or concluded when he asked for Plaintiff's resignation.  Further, the Court declines Defendants' invitation for it to engage in fact-finding by counting "the seconds between miles" to determine Cousins' actual rate of speed.

since admitted he did not know whether Jim Cousins ever crossed the center line on January 15, 2016." The reasonable inference from these allegations is that Chief Alexander told Plaintiff one thing in the course of his termination and subsequently admitted that he did not actually know whether what he previously said was true. Thus, when viewing the allegations in the light most favorable to Plaintiff, the Court cannot conclude that Chief Alexander actually concluded that Cousins had not crossed the center line or driven erratically prior to Plaintiff's termination.

Accepting as true the allegations stated in Plaintiff's Second Amended Complaint and considering the circumstances presently before the Court as a whole, Defendants' interests in maintaining a good working relationship with the Thomas County Sheriff's Office do not outweigh Plaintiff's interests in making an internal report of illegal and dangerous conduct by a member of the Sheriff's Office. The time, manner, and place of Plaintiff's report appear to have occurred in a manner so as to cause minimal disruption. His report does not appear to impair discipline by superiors or directly affect harmony in the Colby Police Department, impact working relationships within the Colby Policy Department, or impede Plaintiff's performance of his duties or interfere with the regular operation of the Colby Police Department. And while the report may detrimentally impact relationships with the Thomas County Sheriff's Office, given the manner, time, and place of the report, the Court does not agree that Defendants' interests outweigh Plaintiff's interests.

iii.     Causation

Finally, Defendants contend that Plaintiff has failed to plead facts sufficient to establish the fourth and fifth elements of his claim. Generally, the fourth and fifth factors are questions of fact for the jury to decide. If, however, Plaintiff fails to plead facts sufficient to support a finding

that Plaintiff's protected speech played a motivating factor in his termination, dismissal may nevertheless be appropriate.

Here, Plaintiff has alleged that Defendants terminated his "employment because he made good faith reports about violations of the law." When viewing the factual allegations in the light most favorable to Plaintiff, as the Court must, Plaintiff has adequately pleaded that his report of Cousins "was a motivating factor" in his termination. Defendants' contention that Plaintiff failed to plead facts to establish the fifth element of his claim also fails. "At the fifth step, if the employee establishes that his or her protected speech was a motivating factor in the adverse employment decision, 'the burden then shifts to the defendant, who must show by a preponderance of the evidence it would have reached the same employment decision in the absence of the protected activity.' "[33] Delving into the fifth step requires the Court to consider facts not contained in the Plaintiff's Second Amended Complaint and is an improper inquiry at this stage. Plaintiff has not failed to plead facts sufficient to support causation, and Chief Alexander and the City of Colby's request for judgment on the pleadings on this basis is denied.[34]

### 2. *Qualified Immunity*[35]

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light

---

[33] *Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2014) (quoting *Cragg v. City of Osawatomie*, 154 F.3d 1343, 1346 (10th Cir. 1998)).

[34] This is true regardless of whether the Court considers the audio and video evidence submitted by Defendants. The audio and video recordings do not definitively show Defendants' reasoning for requesting Plaintiff's resignation. Rather, they simply provide an account of events that occurred on a specific day.

[35] Qualified immunity from suit under § 1983 extends only to government officials in their individual capacities—it does not bar Plaintiff's claims against the City of Colby. *See Bd. of Cty. Comm'rs, Wabaunsee Cty. v. Umbehr*, 518 U.S. 668 (1996); *Cox v Glanz*, 800 F.3d 1231, 1240 (10th Cir. 2013).

of clearly established law."[36]  The doctrine precludes this Court from awarding "damages against a government official in his personal capacity unless the official violated a statutory or constitutional right, and the right was clearly established at the time of the challenged conduct."[37] It protects "all but the plainly incompetent or those who knowingly violate the law," and affords "government officials breathing room to make reasonable but mistaken judgments."[38]

"Once a defendant raises qualified immunity, the plaintiff bears the burden to show that the defendant is not entitled to immunity."[39]  Since Chief Alexander has asserted qualified immunity, Plaintiff "carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[40]  "This is a heavy burden," and if Plaintiff "fails to satisfy either part of the inquiry, the court must grant qualified immunity."[41]  When analyzing whether qualified immunity applies, the Court may address the required prongs in either order.[42] Since the Court addressed the merits of Plaintiff's Second Amended Complaint above, it will focus on the "clearly established" prong here.

---

[36] *Knopf v. Williams*, 884 F.3d 939, 943-44 (10th Cir. 2018) (quotation omitted).

[37] *Lane*, 134 S. Ct. at 2381 (quotations omitted).

[38] *Gutierrez v. Cobos*, 841 F.3d 895, 899-900 (10th Cir. 2016) (quotations omitted).

[39] *Lincoln*, 880 F.3d at 537 (citation omitted).

[40] *Gutierrez*, 841 F.3d at 900 (10th Cir. 2016) (quotation omitted).

[41] *Knopf*, 884 F.3d at 944.

[42] *Id.*

"To be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.' "[43] "A right is 'clearly established' when every 'reasonable official would [understand] that what he is doing violates that right.' "[44] That "right," however, "cannot be defined at a high level of generality; instead, the key is whether the specific conduct has been clearly established as a constitutional violation."[45] "In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[46] A decision, however, need not be specifically on point if the challenged "conduct is obviously unlawful in light of existing precedent."[47]

Because Plaintiff does not have standing to bring a third-party retaliation claim and has not adequately pleaded a claim for violation of his right to familial association, the Court need not address Plaintiff's claims regarding his brother's allegedly protected speech.[48] Accordingly, the Court limits its analysis to whether it was clearly established at the time of Chief Alexander's

---

[43] *Id.* (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

[44] *Lincoln*, 880 F.3d at 537 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (alteration in original).

[45] *Id.* (citation omitted).

[46] *Gutierrez*, 841 F.3d at 900 (quotation omitted).

[47] *Lincoln*, 880 F.3d at 537 (quotation omitted).

[48] The Court notes, however, that even if it did not dismiss Plaintiff's claim relying on his brother's speech, Chief Alexander would be entitled to qualified immunity on this claim. Plaintiff fails to cite cite any Tenth Circuit or U.S. Supreme Court case on point, fails to demonstrate that the clearly established weight of authority from other courts favors his assertions, and fails to otherwise meet his burden on the clearly-established element. *See Gutierrez*, 841 F.3d at 902 (concluding that plaintiffs failed to meet their burden on the clearly-established-law element of qualified immunity where they failed to cite legal authority supporting their claim); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) (noting that the plaintiff was bound by his counsel's "poor lawyering" in failing to meet burden on qualified immunity analysis); *Rojas v. Anderson*, 727 F.3d 1000, 1003-04 (10th Cir. 2013) (affirming grant of summary judgment where the plaintiff "made little, if any, attempt to meet his heavy two-part burden") (quotation omitted); *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) (noting that neither case relied on by the plaintiff clearly established "the law with regard to the specific context of the case presented" there).

actions that Chief Alexander could not terminate Plaintiff for reporting an alleged violation of the law by a fellow law enforcement officer.[49]

In *Walter v. Morton*,[50] the Tenth Circuit recognized the clearly established right for a law enforcement officer not to be discharged for reporting criminal activities of his Chief of Police. There, a police officer believed that the Chief of Police had engaged in illegal activities and reported the findings of his investigation into such activities to the District Attorney's office and to the Oklahoma State Bureau of Investigation. In holding that a fact issue precluded summary judgment on the issue of whether the police chief and mayor were entitled to qualified immunity, the Tenth Circuit noted that the plaintiff "allege[d] he was discharged because he reported criminal activities of the Chief of Police," and that if the plaintiff "was discharged in retaliation [for] his report, this would constitute a violation of a clearly established constitutional right."[51]

The Court concludes that *Walter* establishes the necessary precedent to satisfy the "clearly established" prong. As in *Walter*, this case involves a police officer reporting a high-ranking law enforcement official's suspected illegal activity, and a subsequent discharge allegedly resulting from that report. To the extent differences exist between this case and *Walter*, such differences are immaterial and do not change the result. Indeed, a case need not be directly on point if the

---

[49] The Court rejects Defendants' framing of this question—whether it was clearly established that an employer could not take action against an employee for making what the employer reasonably believed to be a false accusation of wrongdoing against an officer in a neighboring agency. This framing of the question requires the Court to accept as true the premise that Chief Alexander believed Plaintiff made a false accusation at the time of his termination. Plaintiff's Second Amended Complaint does not allege or concede that Chief Alexander believed Plaintiff's allegations regarding Cousins were false. In adjudicating a Rule 12(c) motion, it is improper for the Court to accept Chief Alexander's proffer of what he believed at the time of his decision as it requires the Court to accept facts not contained in Plaintiff's Second Amended Complaint.

[50] 33 F.3d 1240 (10th Cir. 1994).

[51] *Id*. at 1243.

"conduct is obviously unlawful in light of existing precedent."[52]  Based on the facts as alleged by Plaintiff, as well as Tenth Circuit precedent, the Court concludes that it would be premature to grant Chief Alexander's request for qualified immunity at this stage.[53]

### 3. State Law Claims

Defendants ask this Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claim—they do not seek dismissal of Plaintiff's state law claim on any other basis. Because Defendants' request presupposes the dismissal of Plaintiff's federal claims, and since one federal claim remains, the Court denies Defendants' request.

## B.  Undersheriff Nickols' Motion for Judgment on the Pleadings

Plaintiff pursues First Amendment retaliation and tortious interference claims against Undersheriff Nickols.  Because Undersheriff Nickols is not Plaintiff's employer, a different test applies to Plaintiff's First Amendment retaliation claim.  Thus, for Plaintiff's First Amendment retaliation claim against Undersheriff Nickols to survive a motion for judgment on the pleadings, Plaintiff must allege facts that, if true, would satisfy the following elements: (1) that he engaged in constitutionally protected activity, (2) "that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity,"

---

[52] *Lincoln*, 880 F.3d at 537 (quotation omitted).  The Tenth Circuit has also made similar holdings in other government-employment cases.  *See, e.g.*, *Thomas v. City of Blanchard*, 548 F.3d 1317, 1328 (10th Cir. 2008) (concluding that the defendants were not entitled to qualified immunity from terminated employee's First Amendment retaliation claim where the employee alleged that he was terminated for reporting suspected criminal activity by members of the city, including the mayor).

[53] The Court notes, however, that "this does not foreclose Defendant[] from reasserting [his] entitlement to qualified immunity on a motion for summary judgement."  *See Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996) (citation omitted).

and (3) "that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."[54]

To survive Undersheriff Nickols' motion for judgment on the pleadings as to his tortious interference claim, Plaintiff must allege facts to meet the following elements:

> (1) The existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.[55]

Both causes of action against Undersheriff Nickols require a causal connection between Plaintiff's injury and Undersheriff Nickols' actions, and Plaintiff has failed to plead facts sufficient to satisfy the causation elements of either of his claims. Specifically, Plaintiff has not pleaded facts to support a finding that Undersheriff Nickol's actions caused him to suffer an injury or that except for Undersheriff Nickol's conduct, Plaintiff would have continued his employment with the City of Colby.

Plaintiff's Second Amended Complaint alleges that Chief Alexander told Plaintiff that he forced Plaintiff's termination to save him from being charged criminally by Undersheriff Nickols, that Undersheriff Nickols provided Chief Alexander with dashcam footage, and that Undersheriff Nickols took some action because of Plaintiff's brother and because Plaintiff had reported Cousins' driving to law enforcement. While his Second Amended Complaint does not identify what action Undersheriff Nickols allegedly took against Plaintiff, Plaintiff's response brief alleges that

---

[54] *Klen v. City of Loveland*, 661 F.3d 498, 508 (10th Cir. 2011) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

[55] *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 77 P.3d 130, 151 (2003) (quotation omitted).

Undersheriff Nickols demanded that the City of Colby terminate Plaintiff's employment or face criminal prosecution. The Court need not decide whether Plaintiff can rely on a fact alleged in his response brief but not contained in his Second Amended Complaint because even if the Court considered the allegation, Plaintiff's claims still fail. At no point in Plaintiff's Second Amended Complaint does Plaintiff allege that Undersheriff Nickols caused his termination or any other injury. Rather, Plaintiff alleges that Chief Alexander and the City of Colby "terminated Plaintiff's employment because he made good faith reports about violations of the law, because of his familial relationship with Marc Finley, and because Marc Finley exposed unethical and illegal conduct by Thomas County Sheriff Rod Taylor."

The only allegation that could potentially be interpreted as suggesting Undersheriff Nickols caused Plaintiff's termination is that Chief Alexander told Plaintiff that he forced his resignation to save Plaintiff from being charged criminally. Plaintiff, however, does not allege that Chief Alexander terminated him because of Undersheriff Nickols' actions. Rather, Plaintiff pleaded that *after* Chief Alexander told Plaintiff that he did not believe anyone would be filing charges, Chief Alexander told Plaintiff that his "employment was terminated no matter what Plaintiff decided." Simply stated, even assuming Undersheriff Nickols asked for Plaintiff's termination, Plaintiff has failed to plead facts sufficient to support a finding that this request impacted Chief Alexander's decision to terminate Plaintiff, and has failed to plausibly plead a First Amendment retaliation claim against Undersheriff Nickols.[56]

---

[56] For the reasons explained above, to the extent Plaintiff seeks to pursue a claim against Undersheriff Nickols for retaliation based on Marc Finley's allegedly protected speech, Plaintiff does not have standing to pursue a First Amendment retaliation claim based on his brother's activity and he has not adequately pleaded a familial rights claim.

Plaintiff's tortious interference claim against Undersheriff Nickols fails for similar reasons. Plaintiff admits that in order to pursue a tortious interference claim, he must show that "except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy." Plaintiff fails to allege facts sufficient to support a finding that his termination resulted from Undersheriff Nickols' action, and that he would not have been terminated in the absence of Undersheriff Nickols' actions.

In short, Plaintiff fails to plead facts sufficient to support the necessary causal link between Undersheriff Nickols' allegedly improper actions and the injury suffered by Plaintiff. Without such facts, Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted against Undersheriff Nickols.

## IV.    Conclusion

Defendant does not have standing to pursue a First Amendment retaliation claim based on his brother's speech. However, Plaintiff has adequately pleaded a cause of action against the City of Colby and Chief Alexander based on his report regarding Cousins, and Chief Alexander is not entitled to qualified immunity with regard to this claim. Accordingly, Chief Alexander and the City of Colby's motion for judgment on the pleadings is granted in part and denied in part. Because Plaintiff failed to adequately plead facts sufficient to support a finding of causation as to Undersheriff Nickols, the Court grants Undersheriff Nickols' motion for judgment on the pleadings. Finally, Defendants' motions for judgment on the pleadings filed before Plaintiff filed his Second Amended Complaint are denied as moot.

**IT IS THEREFORE ORDERED** that The City of Colby's and Ron Alexander's Motion for Judgment on the Pleadings Dismissing Plaintiff's Second Amended Complaint (Doc. 49) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant Nickols' Motion for Judgment on the Pleadings (Doc. 54) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Ron Alexander and the City of Colby's Motion for Judgment on the Pleadings (Doc. 31) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant Nickols' Motion for Judgment on the Pleadings (Doc. 32) is **DENIED** as moot.

**IT IS SO ORDERED**.

Dated this 19th day of July, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE