## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LANCE FINLEY,             )
                      )
             Plaintiff,   )
                      )
v.                    )     Case No. 17-1215-EFM-KGG
                      )
CITY OF COLBY, KANSAS and  )
RON ALEXANDER,        )
                      )
            Defendants.  )
                      )

## PRETRIAL ORDER

A pretrial conference was conducted in this case on August 28, 2019, by U.S. Magistrate Judge Kenneth G. Gale. The plaintiff, Lance Finley, appeared through counsel, Sean McGivern.  The defendants, City of Colby, Kansas, and Ron Alexander, appeared through counsel, Allen G. Glendenning and Michael Clough Abbott.

This pretrial order supersedes all pleadings and controls the subsequent course of this case.  It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice.  Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(b).

## 1.    PRELIMINARY MATTERS.

**a.    Subject-Matter Jurisdiction.**  Subject-matter jurisdiction is invoked under 28 U.S.C. §§ 1331 and 1367, and it is not disputed on the federal claim.  Subject matter

jurisdiction over state law claims not within the scope of the Notice of Claim pursuant to K.S.A. 12-105b(d) is denied.

       **b.**    **Personal Jurisdiction.**  The court's personal jurisdiction over the parties is not disputed.

       **c.**    **Venue.**  Venue in this court is not disputed.

       **d.**    **Governing Law.**  Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law: federal law applies to Plaintiff's claim against Defendants under 42 U.S.C. § 1983; Kansas substantive law applies to Plaintiff's claim against Defendant City of Colby, Kansas. There are no disputes about choice of law.

**2.**    **STIPULATIONS.**

      **a.**    The following facts are stipulated:

            i.    Finley Deposition Exhibit 1 (previously conventionally filed with the court as Exhibit C) is a true and accurate copy of the video from the dashcam in the blue Tahoe driven by Jim Cousins on January 15, 2016.  The video depicts the encounter between the Finley and Jim Cousins from the perspective of the blue Tahoe driven by Jim Cousins.

    ii.    The documents bearing bates numbers PL 0166 through PL 0180 are a true and accurate copy of the Thomas County Sheriff's Office Evidence Control policies in effect in 2016.

    iii.    Finley Deposition Exhibit 2 (previously conventionally filed with the court as Exhibit B) is a true and accurate copy of the audio of Finley's conversations with Darren Tousley and Deputy Cox on January 15, 2016 concerning Jim Cousins – the report for which Finley alleges he was terminated.

    iv.    Plaintiff Finley was given the choice to resign or be terminated. Finley initially chose to resign but recanted the resignation the following day. Finley's separation from employment was involuntary.

    v.    The documents bearing bates number DEF 000002 through DEF 000317 are a true and accurate copy of Plaintiff's employment files made and maintained by the City of Colby.

**b.**    The parties have stipulated to the admissibility of the following exhibits for purposes of summary judgment and trial:

Video of Jim Cousins encounter (Finley Deposition Exhibit 1, conventionally filed C**3.**

### FACTUAL CONTENTIONS.

**a.**    **Contentions of Plaintiff.**

Plaintiff Lance Finley, who was raised in a law enforcement family, began working for the Colby Police Department ("PD") as a police officer in 2013.  The PD is a department of Defendant City of Colby, Kansas.  Defendant Ron Alexander is the Chief of Police at City of Colby.

Though Defendant Alexander removed Finley from field training early (halfway through), Finley excelled as an officer.  He focused on drug buys and narcotics

3

investigations more than other officers at the PD, and these cases require more work than ordinary traffic stops or public service calls.   Finley received positive evaluations throughout his employment, though he was cited on some occasions for being late on reports.  In October 2015, Alexander gave Finley a positive evaluation, a promotion, and a merit raise.

There were political problems going on in Thomas County, Kansas in 2015 and 2016.  Specifically, there were reports of misconduct against the Sheriff of Thomas County Sheriff Rod Taylor involving alcohol issues, erratic driving, automobile accidents in his County vehicle, prisoner abuse, and sexual harassment.  Constituents of Thomas County, including Lance Finley's brother Marc Finley, notified public officials and media outlets about Sheriff Taylor's misconduct.  Defendant Alexander supported these efforts though he did not sign off on a letter that Marc Finley sent to the authorities about Taylor.  Taylor's illegal conduct caused friction between the Sheriff's Office and the Police Department. Allen Glendenning was retained to investigate these allegations.  At some point in late 2015, Defendant Alexander issued an injunction against his officers enforcing traffic laws against Rod Taylor.

In November 2015, Jim Cousins, a deputy at Thomas County Sheriff's Department, was driving down a main street in Colby in his personal vehicle with his windshield covered almost completely with snow.  Finley pulled over deputy Cousins and indicated he would issue him a ticket for obstructed view later that day, but he could not do so at that time because the location of the stop made it unsafe for all involved.  Later that day at the

PD, Defendant Alexander overrode Finley's decision and told him to issue a warning. Defendant Alexander and deputy Cousins are old drinking buddies, and they used to chase women together.

On the morning of January 15, 2016, Finley observed a blue Thomas County Sheriff's Office Tahoe driving erratically on a county road. Finley was off duty that morning as he had been up the night before working. Finley notified dispatch and others that whoever was driving the blue Tahoe almost ran him off the road. Defendant Alexander believes that Finley's complaint about the Tahoe was politically motivated.

On February 16, 2016, Tom Nickols, the undersheriff of Thomas County, provided Defendant Alexander a video of the January 15, 2016 encounter. Nickols, too, believed there were political issues between the Sheriff's Office and the PD. Nickols observed Cousins engage in several unique traffic violations on the video but he did not discipline or cite Cousins over those violations. Alexander reviewed the video and decided that it did not substantiate what Plaintiff had said back on January 15. Alexander and City Manager Tyson McGreer made a joint decision to terminate Finley. Though he had already decided to fire Finley, Alexander allowed Finley to go out as lead investigator on high-level felony drug buys the night of February 16.

On the morning of February 17, 2017, after Finley had been at work the preceding night, Alexander summoned Finley to a meeting and notified Finley he would be terminated if he did not resign, based upon the video. Alexander warned Finley that Nickols was looking to pursue criminal charges against Finley based upon the report.

Finley, who was fatigued from the lack of sleep, agreed to resign.  The next day, Finley withdrew his resignation.  Defendant Alexander told Finley he should tell people the politics were so bad that he had to resign, and because Defendant Alexander is an idiot.

Defendant Alexander reported to the Kansas law enforcement licensing authority (CPOST) that Finley was fired based upon documented performance evaluation issues and because he filed an unsubstantiated.  Finley's prior evaluations were generally positive. Defendant Alexander has admitted that he could not tell whether deputy Cousins crossed the center line or not, but he now maintains in this litigation that Finley's report was deceitful and intentionally misleading.

Defendants Alexander and City of Colby, Kansas, would not have fired Finley if he did not engage in conduct protected by the First Amendment.  Defendants tolerate a wide range of worse conduct, including illegal conduct, from their employees, including the following examples:

 i.  One City employee has misused CJIS resources to identify women to pursue on Facebook.

 ii.  One City employee made a false use of force complaint against Finley because an operation did not go the way the employee wanted.

 iii.  One City employee showed a picture of his penis to the dispatch manager, and others harassed her, without recourse.

iv.  Defendant Alexander suppressed an investigation into narcotics purchases by Terry and Sheri Overton, who are crossfit buddies of Tyson McGreer, the City Manager.  Terry Overton was and is a City employee.

v.  One of Defendant Alexander's subordinates, Bob Herren, stored multiple kilograms of cocaine at his house.

vi.  One City employee accepts gratuities from a movie theater where he spends time, on shift, during the workweek.

The Defendants have no policy prohibiting retaliation based upon engaging in activities protected by the First Amendment.  The Defendants admittedly have no consistent policies or practices for disciplining employees, and Defendant Alexander admittedly has problems with his memory.   Therefore, City of Colby has genuine issues with recognizing, documenting, and addressing employee misconduct.  Firing Finley over an unsubstantiated report, while allowing all kinds of misconduct, demonstrates that Defendants would not have fired Finley if he did not exercise rights protected by the First Amendment.

Finley has been damaged by his termination from City of Colby.  His family is split apart due to Finley and his spouse's current jobs, and Finley has suffered economic and noneconomic losses.

**b.  Contentions of Defendant(s).**

Defendants generally deny Plaintiff's allegations.  Plaintiff was employed as a police officer with the Colby Police Department in 2013. Beginning in at least 2014, performance issues arose with Plaintiff failing or refusing to take calls, failing to timely

submit reports, causing conflicts with co-workers,  demonstrating a lack of respect for superiors, tardiness, and following instructions from superiors, including but not limited to making an arrests without a warrant after having been instructed by a supervisor to get a warrant before making the arrests.   These were noted in evaluations and, in part, acknowledged by Plaintiff.  Plaintiff was put under the supervision of several different supervisors in an effort to address these problems.

Plaintiff also violated policy by holding confiscated cell phones without properly documenting their seizure, failing to get a warrant and leaving them in file cabinets rather than placing them in the evidence locker.

On May 26, 2015, Plaintiff was given a written warning and placed on probation for a list of problems with his performance.   During the probation, Plaintiff received another warning concerning his performance.  At the end of the probationary period, Plaintiff was evaluated and found to be below standard on 5 out of 11 categories. On August 14, 2015, Plaintiff received an evaluation in which his performance was noted to be below standard in 5 out of 11 categories and the probation was extended. At the end of the extended probation, Plaintiff was evaluated and noted to have made some improvement but was also noted to still need improvement.

On January 15, 2016, Plaintiff called a city dispatcher and inquired who was driving the  blue Tahoe that had formerly been driven by Plaintiff's brother  Upon being advised that it was Deputy Jim  Cousins, Plaintiff advised the dispatcher that Cousins  had "went left of center", "about ran me off the road", "about fucking hit me" and "it looks like he

was running a hundred and twenty." Plaintiff then advised another deputy that the driver of the blue Tahoe had was "running at least ninety plus" , had "come clear left of center, "just about went head on with me", and "I started to jerk it down in the ditch before he jerked it back." Plaintiff then sent a text to Ron Alexander advising that "Jim [Cousins] just went left of center and ran me off the road . . . he went left of center." Plaintiff also reported this to the County Attorney. Mr. Cousins denied the allegations. Defendants took no action as a result of the report.

On February 12, 2016, it was discovered that plaintiff was still or again violating policy by holding confiscated cell phones without properly documenting their seizure, failing to get a warrant and leaving them in file cabinets rather than placing them in the evidence locker. On February 16, Undersheriff Nichols advised Chief Alexander that the Sheriff's Office had discovered that a dashcam in the car being driven by Jim Cousins had been recording his entire trip, including the moment when he met and passed Plaintiff on the road. A copy of the video was furnished to Chief Alexander. This video showed that Cousins had not been running 120 of even 90, did not go left of center, did not run or even almost run, Plaintiff off the road and that Plaintiff's allegation against Jim Cousins was not made in good faith and had been entirely fabricated. This, on top of the ongoing performance issues resulted in plaintiff being asked to resign and is a legitimate reason for termination. Chief Alexander did not tell Plaintiff that he was terminated because of politics. Chief Alexander told Plaintiff that, if he chose to resign, he could tell people anything he wanted for a reason.

The employment decision would have been the same in the absence of any unlawful motive.

4.      **LEGAL CLAIMS AND DEFENSES.**

a.      **Legal Claims of Plaintiff(s).**

Plaintiff Lance Finley asserts that he is entitled to recover upon the following theories:

Plaintiff alleges that Defendants City of Colby and Alexander retaliated against him for reporting erratic driving by deputy Jim Cousins, in violation of the First Amendment.

Plaintiff alleges that Defendant City of Colby retaliated against him for reporting erratic driving by deputy Jim Cousins, and/or for his brother Marc Finley's report of improper and illegal conduct by Rod Taylor, former Sheriff of Thomas County, Kansas.

b.      **Defenses of Defendant(s).**

Plaintiff cannot establish the essential elements of his claims.

The court lacks subject matter jurisdiction over any state law claim outside scope of the Notice of Claim filed with the City.

Plaintiff's claims against Ron Alexander are barred by qualified immunity.

Plaintiff's claim based upon the activity of his brother is not cognizable and has been disposed of by the court's ruling on the Motion for Judgement on the pleadings.

The acts complained of by Plaintiff were not pursuant to a policy of the City or committed by a policymaker.

10

Plaintiff's damages are not of the nature and extent alleged.

Punitive damages are not awardable as a matter of law or fact.

The employment decision would have been the same in the absence of any unlawful motive.

Plaintiff's state law claim based upon his brother's report concerning Rod Taylor is foreclosed by the court's previous rulings and/or barred by law of the case, res judicata and/or collateral estoppel.

5.    **DAMAGES AND NON-MONETARY RELIEF REQUESTED.**

Plaintiff Lance Finley seeks:

- a. Economic Damages
  - a. Approximately $21,000.00 for the period of time Lance Finley was without a job.
  - b. Approximately $10,800.00 per year since December 2017 based upon additional mileage that Lance and his spouse must drive as a result of job/living arrangements.
- b. Noneconomic Damages – $200,000.00.
- c. Punitive Damages – $200,000.00.
- d. Attorneys fees – per 42 U.S.C. § 1988.

6.    **AMENDMENTS TO PLEADINGS.**

None, other than those inherent in this order.

7.    **DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by June 25, 2019.

Unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions or other pretrial preparations.  Although discovery may be conducted beyond the deadline for completion

of discovery <u>if</u> all parties are in agreement to do so, under these circumstances the court will <u>not</u> be available to resolve any disputes that arise during the course of such extended discovery.

8.   **MOTIONS.**

      a.   **Pending Motions.**

          None.

      b.   **Additional Pretrial Motions.**

      After the pretrial conference, the parties intend to file the following motions:

          Defendant intends to file a motion for summary judgment and a motion in limine.

          Plaintiff intends to file a motion in limine.

      The dispositive-motion deadline, is **September 30, 2019**.  Counsel are advised that extensions to the briefing schedule for dispositive motions may result in a new trial setting.

      The parties should follow the summary-judgment guidelines available on the court's website:

http://ksd.uscourts.gov/wp-content/uploads/2015/10/Summary-Judgment-Guidelines.pdf

      Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda must not exceed 30 pages, absent an order of the court.

Judge Melgren has entered a standing order regarding Page Limitations for Memorandums and Brief.  The standing order can be found on the court's Internet website at

*http://ksd.uscourts.gov/index.php/guideline-order/standing-order-regarding-page-limitations-for-memorandums-and-briefs-melgren/*

      **c.**     **Motions Regarding Expert Testimony.**  Not applicable, i.e., the parties have stipulated that no expert testimony will be used in this case.

**9.**    **TRIAL.**

The case is set for trial on **May 26, 2020 at 9:00 a.m.,** in Wichita, Kansas.  This case will be tried by jury.  Trial is expected to take approximately 3 days.  The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial [or as otherwise stated in the scheduling order].  If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge will issue an order or convene another pretrial conference to discuss, among other things, the setting of deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

IT IS SO ORDERED.

Dated August 28, 2019, at Wichita, Kansas.

s/ KENNETH G. GALE
Kenneth G. Gale
U. S. Magistrate Judge