Page 1

```
 1
               IN THE UNITED STATES DISTRICT COURT
 2                    DISTRICT FOR KANSAS
 3
        LANCE FINLEY,                 )
 4                                    )
                     Plaintiff,       )
 5                                    )
        vs.                           )   Case No.
 6                                    )   6:17-CV-01215-EFM-
        CITY OF COLBY, KANSAS,        )   KGG
 7      RON ALEXANDER and TOM         )
        NICKOLS, JR.,                 )
 8                                    )
                     Defendants.      )
 9
10
11                   D-E-P-O-S-I-T-I-O-N
12
13
14                   The deposition of
15                   JOEL THOMAS NICKOLS
16      was taken on behalf of the defendants before
17      ELAINE SHOGREN, a Certified Court Reporter of
18      Kansas, at Thomas County Courthouse, Commissioners
19      Room, 300 North Court Avenue, Colby, Kansas, on
20      February 1, 2019, commencing at 9:51 a.m.
21
22
23
24
25      Job No. CS3177461
```

Page 5

```
 1                       JOEL THOMAS NICKOLS,

 2        called as a witness on behalf of the defendants,

 3        having been first duly sworn, testified as follows:

 4                       DIRECT EXAMINATION

 5        BY MR. GLENDENNING:

 6    Q   Would you state your name and address, please.

 7    A   Legal name, Joel Thomas Nickols.  Do you want my

 8        residence or work address?

 9    Q   Residence, please.

10    A   415 West 8th, Colby, Kansas.

11    Q   Okay.  And how are you employed?

12    A   I am the elected sheriff of Thomas County.

13    Q   Okay.  How long have you had that position?

14    A   Since 2017 to the present.

15    Q   Were you in law enforcement prior to that?

16    A   Yes.

17    Q   How long?

18    A   I was on the reserve for Thomas County back in '85,

19        full time with the Colby Police Department from

20        August of 1986 to June of 2005, and then was asked

21        to come back in as undersheriff under the previous

22        administration on the 12th month -- the first day of

23        2015 -- December 1st, 2015.

24    Q   Okay.  Were you serving as the undersheriff in

25        January of 2016?
```

Page 6

1    A   Yes.

2    Q   Okay.  Do you know Lance Finley?

3    A   Personally, no.  But I do know him from him working

4        in the police department.

5    Q   Okay.  Did you ever have any interactions with him

6        prior to January of 2016?

7    A   No, not that I recall.

8    Q   Were you at the Thomas County Sheriff's Department

9        when his brother, Marc Finley, was let go from the

10       sheriff's department?

11   A   No, I was not.

12   Q   Were you at all involved in that or any of the

13       turmoil that surrounded that?

14   A   No.

15   Q   Did you become aware sometime in 2016 of an

16       accusation that Jim Cousins had attempted to run or

17       almost run Mr. Lance Finley off the road?

18   A   Yes.

19   Q   How did you become aware of that?

20   A   I was told by a deputy, Jake Cox.

21   Q   Okay.  And what did he tell you?

22   A   That Jim had crossed the center line while doing a

23       transport and -- while coming back from Atwood.

24   Q   Okay.  Anything else he told you at that time?

25   A   And that it was Lance that he ran off the road.

Page 31

1   Q   In January of 2016, did you know whether or not it
2       was lawful for people to park in those stripes?
3                   MR. GLENDENNING:  Object to form.
4   A   It was not.
5   Q   (BY MR. MCGIVERN)  Okay.  And you observed
6       Mr. Cousins parking in stripes adjacent to a
7       handicapped stall on the video, correct?
8                   MR. GLENDENNING:  Object to form.
9   Q   (BY MR. MCGIVERN)  I'm sorry.  Did you observe that
10      occur?
11                  MR. GLENDENNING:  Object to form.  Go
12      ahead.
13  A   Yes.
14  Q   (BY MR. MCGIVERN)  Okay.  And would that be an
15      infraction of the traffic laws of the state of
16      Kansas?
17  A   Yes.
18  Q   Okay.  So right now you have testified of three
19      unique infractions by Mr. Cousins in this video;
20      true?
21  A   Yes.
22  Q   Okay.  I have not seen any tickets given to
23      Mr. Cousins regarding the three infractions that you
24      testified about.  Are there any?
25  A   No.

Page 61

1    A   Yes, I have.

2    Q   Okay.  Have you ever self-reported your -- what you

3        did to the county?

4                MR. HIATT:  Object to form.

5                MR. GLENDENNING:  Object to form.

6    A   Define "the county".  To the commissioners?  No, I

7        have not.

8    Q   (BY MR. MCGIVERN)  Okay.

9    A   Other people?  Yes, I have.

10   Q   Have you told people that you have anger issues?

11   A   Oh, I guess I told them what they were doing really

12       upsets me or pisses me off, yeah, if that is an

13       anger issue.

14   Q   Have you told people just in general, I have got

15       anger issues?

16               MR. GLENDENNING:  Object to form.

17               MR. HIATT:  Same objection.

18   A   In the past, yes.

19   Q   (BY MR. MCGIVERN)  Okay.  And do you have anger

20       issues?

21   A   Yes, I do.

22   Q   All right.  And in February of 2016, the politics

23       were pretty bad between Thomas County sheriff's

24       office and the police department, right?

25               MR. GLENDENNING:  Object to form.

Page 67

```
 1    A   To Rod?

 2    Q   Yes, sir.

 3    A   Well, I probably did.  I don't recall, but more than

 4        likely I did.  Because he was still sheriff at that

 5        point in time.

 6    Q   Okay.

 7               MR. MCGIVERN:  We can take a five-minute

 8        break.

 9               (Recess taken at 11:27 a.m.  Resumed at

10        11:33 a.m.)

11    Q   (BY MR. MCGIVERN)  Sir, is it fair to say that you

12        have not established a chain of custody for the

13        video that is Deposition Exhibit 1?

14               MR. GLENDENNING:  Object to form.

15               MR. HIATT:  Same objection.

16    A   That I can -- fair to say, yes.  I did not observe

17        this as a criminal matter at the time.

18    Q   (BY MR. MCGIVERN)  Okay.  And is it fair to say that

19        when you were meeting with Cody Honas you understood

20        that you were supposed to provide truthful

21        information to him, right?

22    A   Yes.

23    Q   And in a few of your answers you provided

24        speculation to him, right?

25               MR. GLENDENNING:  Object to form.
```