DocuSign Envelope ID: 706928D2-66A5-4095-A2A3-051347B86027

## Declaration of Marc Finley

My name is Marc Finley. I am over the age of 18 years and competent to testify. The testimony below is based upon my personal knowledge.

1. I have been a law enforcement officer since December 2001. From January 2009 to October 2015, I worked at the Thomas County Sheriff's Office in Colby, Kansas as the Undersheriff. Since January 2016, I have worked as a deputy for Cheyenne, Wallace, and Logan Counties in a combined position.

2. Lance Finley, plaintiff in the civil action Lance Finley v. City of Colby, Kansas et al., is my younger brother.

3. Through my work in law enforcement, I am familiar with City of Colby Police Chief Ron Alexander, Thomas County Deputy Jim Cousins, City of Colby Police Officer Chris Bustillos, Former City of Colby Police Officer Bob Herren, and Former Thomas County Sheriff Rod Taylor.

4. It is known throughout the City of Colby law enforcement community that Ron Alexander and Jim Cousins were drinking buddies and that they used to chase women together. Chief Alexander and Deputy Cousins bragged about and chuckled about these facts in my presence on many occasions.

5. After I became Undersheriff of Thomas County, Ron Alexander and I were driving to a KLETC graduation ceremony. During this ride, we spoke about Bob Herren. Bob Herren is a former member of the Colby Police Department and a friend of Ron Alexander. He was employed with the Colby Police Department until 2008. Alexander revealed to me, that, in 2006 or 2007, Bob Herren stored six kilograms of cocaine in his personal safe at his home. Alexander, who was a supervisor over Herren at that time, acknowledged this was wrong but that he had not done anything about it. I found this to be very troubling as Alexander would have been a Corporal at the time, with supervisory authority over Herren.

6. In early 2015, I was approached by a fellow law enforcement officer Ben Kahle, who told me that a student at the local community college had reported being followed by a City of Colby Police Officer (Chris Bustillos) for a period of time, and then receiving a friend request from the officer on Facebook. Kahle expressed to me, and I agreed, that the clear implication of the woman's report was that Officer Bustillos had misused police resources (license plate lookup) to pursue women. I notified Chief Ron Alexander of the offense as well as the name of the woman involved and I told him he should investigate the matter.

7. In July 2015, the Kansas Bureau of Investigation interviewed me, Colby Police Chief Ron Alexander, and others concerning an officer-involved shooting. The interviews

      took place at the Colby Police Department. After Chief Alexander was interviewed, he exited the interview room and said that due to medical issues, he: (i) had trouble remembering things under stress; (ii) had trouble remembering things in chronological order under stress; and (iii) had no short-term memory. Chief Alexander told me these things because, according to him, he had expressed these concerns to the KBI investigator during the interview.

8.       In 2015, staff at Thomas County Sheriff's Office, including me, Keyna Baalman, Lance Goodman, and others were concerned about ongoing misconduct by Rod Taylor including automobile accidents. Chief Alexander reported Rod Taylor to the Kansas Department of Revenue based upon his erratic driving, for a drivers' license review.

9.       In September 2015, I wrote a letter to the Thomas County Board of County Commissioners, and others, about misconduct committed by Rod Taylor, who was then the Thomas County Sheriff. The letter is attached to this Declaration as Exhibit A and everything in that letter is true. Ron Alexander, who was the Chief of Police at City of Colby, agreed to sign the letter with me. Chief Alexander then declined to sign the letter and I sent it out under my own signature. Chief Alexander attributed his decision to conversations with Colby's City Manager and City Attorney.

I declare under penalty of perjury that the foregoing is true and correct.

*(DocuSigned by: B8AFCCBB826D4D3...)*

Marc Finley

Executed on November 6, 2019.

2

*Mailed 09/18/15*

To whom it may concern:

Sheriff Rod Taylor was elected Thomas County Sheriff in 2008. Sheriff Taylor since that time has had numerous medical conditions and issues that are dramatically affecting his judgement, behavior and rational status. While an elected official Sheriff Taylor is no longer representing the citizens of Thomas County with his irrational behavior and decision making.

The following synopsis identifies a continued pattern and practice of erratic behavior being displayed by Sheriff Taylor. Sheriff Taylor frequently forgets or ignores State, County, and Thomas County Sheriff's Office policies and procedures which cause employees to always be in a state of flux concerning what actions are to be taken vs just how Sheriff Taylor wants something done that day. Memos are constantly being sent out. Numerous memos are issued by Sheriff Taylor only then to be brought to his attention that his directive is unethical or sometimes even against statutes and laws. Sheriff Taylor will then produce corrected memos only further confuse the Sheriff Department's staff. At times, multiple correction memos have to be sent out. Sheriff Taylor, in staff meetings, has advised the personnel to go against policy and procedure because he does not understand many of the policies or isn't familiar with them. In some cases, when Sheriff Taylor has been asked why he is not following his own policies and procedures, he is only angered and dismisses the employee from the situation. This causes a huge risk to the sheriff's department staff if they are instructed to behave in a way that is contrary to policy and could therefore put their jobs and reputation at risk. This causes mass confusion and tension by Sheriff's Office Staff, without clear direction and leadership to follow. The lack of professionalism, direction, knowledge of the law and polices, and irrational behavior has caused an atmosphere of chaos and fear. Sheriff Taylor has used intimidation and humiliation as weapon for anyone who questions his judgement or behavior.

Sheriff Taylor has failed to obtain his yearly statutorily required continuing education and training hours, six out of the past seven years.

State, County, and City Law Enforcement prefer Sheriff Taylor not be dispatched to incidents do to his erratic behavior, lack of judgment and occasionally the odor of alcohol on his breath. Several dispatchers refuse to call Sheriff Taylor out and only notify Sheriff Taylor after the call has been handled.

Sheriff Taylor operates on a daily basis county owned and tax payer funded vehicles. The tax payers pay the insurance and are now liable for the actions of Sheriff Taylor while he is operating County vehicles. The following are incidents of serious concern in regards to Sheriff Taylor's operation of County vehicles.

In spring of 2012, Sheriff Taylor backed into a vehicle in the Thomas County Impound Lot. Then while backing out of the lot, he struck an enclosed trailer and continued to back out the gate, hitting a parked SUV owned by Billy Hill from Gem, KS. This caved in the bumper on Sheriff Taylor's patrol vehicle that he was operating. Sheriff Taylor was operating the patrol vehicle while under the influence of prescription pain pills and other medication. Witnesses were Deputy Staab, Marvena Chance and inmate Taylor Brown.

EXHIBIT A
to Declaration of Marc Finley

Sheriff Taylor struck a Colby Police Department vehicle in the back parking lot of the Law Enforcement Center that Sargent Dible was operating at the time.

Sheriff Taylor backed into Wagoner's and Sons wrecker and damaged the bumper on his patrol vehicle. Witnesses were Josh Schwartz and Dave Wagoner, employees at Wagoner's.

Sheriff Taylor struck a tree in Ferguson Park, as he was backing up, approximately April 2015. Sheriff Taylor told everyone he slid on the wet grass (grass was not wet). He later changed his story to say he was chasing kids on ATV's. Witnesses were CPD Officer Sam Steel and land owners Yvonne and Gary Baumlfalk.

On July 4th, 2015, there was an injury accident on I-70 in Thomas County. Thomas County Deputy Travis Budke was on duty and responding to the call. Sheriff Taylor told Deputy Budke not to respond to the injury accident and that he would go in five or six minutes. Sheriff Taylor arrived on scene and parked his patrol vehicle on I-70, causing serious traffic concerns, which were not present until Sheriff Taylor arrived on scene.

Colby Police Officers Trevor Williamson, Chelston Ketting and Deputy Lance Goodman were working an aggravated battery with firearm involved call on West Sixth Street in Colby, KS. Sheriff Taylor arrived in his personal vehicle in civilian clothing, smelling of alcohol. He then parked partially in the yard of the residence. Sheriff Taylor then transported the victims of the incident to the hospital in his personal vehicle, under the influence. Officer Ketting heard Sheriff Taylor tell the victim never mind the odor of alcohol I just had a few drinks.

Sheriff Taylor and Deputy Staab transported a juvenile to Garden City. Deputy Staab could smell alcohol on Sheriff Taylor's breath. While leaving the juvenile facility, Sheriff Taylor was backing out of the facility and struck a parked vehicle. He told Deputy Staab there wasn't any damage but never got out of the vehicle to check. Nothing was reported to the insurance carrier related to the incident.

Members of the trap club direct Sheriff Taylor out of the parking lot because of all the vehicles and power polls that he has struck at the club.

There have been numerous reports of Sheriff Taylor driving at high rates of speed with no lights on or sirens, for no apparent reason, as there had been no calls for service during the times in question.

In May of 2015, all radios were taken to the fire department so that they could be worked on. Sheriff Taylor told Deputy's' Cox and Goodman, that he had cut the seatbelt on his new Durango because he didn't like to wear it and it kept "dinging". Later, when Sheriff Taylor was confronted by county commissioners about it, Sheriff Taylor stated that he was trapped in his vehicle by the seatbelt and had to cut it to get out. An incident occurring where he had to cut himself out of the seatbelt was never documented nor was the vehicle ever taken to have the seat belt repaired. He then started driving an unmarked black Ford, but lost the keys, then started driving a department pickup.

Sheriff Taylor has conducted his behavior with members of the Thomas County Sheriff's in an unprofessional and apprehensive manner. Following are examples of incidents where employees have been harassed and humiliated by Sheriff Taylor.

Marvena Chance has been employed several times by the Thomas County Sheriff's Office. Sheriff Taylor openly told all other Sheriff's Office employees that she was hired because she was a friend of his and that her doctor told her she needed to "get out of the house more often". He created a position for her, to help her out. Sheriff Taylor was also open to the staff that Chance was hired because she could perform any other employee's duties better than they could. This caused discontent in the workplace. Chance once told an employee that he was fat and did not look appealing in uniform. Sheriff Taylor and Chance were open to the other staff that she was brought in making $15 per hour which angered the staff that was hired at a smaller pay amounts that did in fact have law enforcement training. Chance had no law enforcement training. Chance shared the office space with Sheriff Taylor. Chance was privy to confidential information that she in turn shared with others in the office, i.e., employee's income amounts and what she read in their personnel files. Chance had access to all employee files in her office and was honest that she often took them home to read. Marvena Chance openly discussed with all staff that Sheriff Taylor had, on multiple occasions, requested her to supply his alcohol by running to the liquor store. Marvena Chance on multiple occasions, said Sheriff Taylor, under the influence, would call her and asks her to come to his house to engage in sex. Chance shared with employees that Sheriff Taylor was diagnosed with dementia. It is unclear whether this claim is fact or gossip. In early November 2014, Marvena Chance quit without notice. Sheriff Taylor expressed to employees that he was "relieved" that she was gone.

On Monday afternoon, 8/24/2105, Teri Cloe was handing some warrants to Deputy Cox that needed to be served to individuals in the jail. Sheriff Taylor stated, "Teri just hike that skirt up and go back there in the jail and serve these papers." Cloe turned around and walked out and Cloe could hear him saying something as she walked down the hall. Later deputy Cox texted Cloe that Rod was apologizing as she walked down the hall. Deputy Cox said the sheriff said he made the comment because he was trying to make a joke and lighten the mood and it just came out horribly wrong. Cloe stated she didn't realize the mood needed lightened and Cloe thinks these remarks are uncalled for and make her feel very uncomfortable. Cloe stated it has got to the point she doesn't want to be in a room with Sheriff Taylor alone as it really makes her uncomfortable.

After inappropriate remarks were made to Teri Cloe again by Sheriff Rod Taylor, Teri Cloe talked to Undersheriff Marc Finley. He suggested Cloe write down what has been said to her and start documenting these remarks.

On a previous occasion Sheriff Taylor has told Cloe, her skirt makes her look sexy. Sheriff Taylor has called Teri Cloe "Ms. Cleavage".

Cloe stated that she will talk to Sheriff Taylor and tell him that he makes her uncomfortable when he talks to her this way.

Sheriff Taylor threatened Undersheriff Finley with his employment and then proceeded to publicly humiliate him during a department meeting. During the staff meeting Sheriff Taylor made numerous false accusations against Undersheriff Finley. Undersheriff Finley presented proof to counter Sheriff Taylor's accusations, but Sheriff Taylor refused to listen.

Sheriff Taylor on numerous occasions has made degrading and humiliating comments about members of the jail staff. Sheriff Taylor is openly critical of their appearance, not in a constructive manner.

Sheriff Taylor has abused his power as a law enforcement official on numerous occasions. Sheriff Taylor has violated individual's rights, and put them in position of fear for their safety. The following are examples of incidents.

Sheriff Taylor responded to a domestic call in Brewster at David Mayer's residence. Sheriff Taylor attempted to kick in the back door of the residence. When asked why Sheriff Taylor stated that he was going to kick the shit out of Mayer so he would quit getting called over to his residence.

On December 14, 2012, Deputy Lance Goodman responded to a battery at Frontier Ag in Brewster, involving David Mayer and Bruce Ferguson. By the time Deputies and KHP arrived, Mayer had left. Sheriff Taylor arrived and went to the Mayer Residence, where Sheriff Taylor entered the residence without exigent circumstances or other exceptions to search warrants. Sheriff Taylor then arrested Mayer after unlawfully entering the residence.

Inmate Banedetti flooded the detox cell and the hallway in the jail. Sheriff Taylor went into the jail to confront Banedetti. Sheriff Taylor had the door opened by Detention Deputy Luckert and Benedetti rushed out. Sheriff Taylor then swung his ASP at Banedetti's head. Deputy Goodman was able to block the ASP so that Benedetti would not be struck in the head. Deputy Goodman received a large gash on his arm as a result of being struck by the ASP, swung by Sheriff Taylor.

July 16, 2015, inmate Mark Sandoval threw his food out of the food port, onto the floor and refused to clean it up. While Sheriff Taylor was speaking to Sandoval about the incident, Sheriff Taylor threatened Sandoval that he would "shove a broom handle up his ass".

In 2014, Sheriff Taylor was in a yelling match with inmate Damien Siruta when Sheriff Taylor threatened to bring his shotgun back into the jail and "take care of the inmate".

On April 25, 2015, Inmate Kendrick Moore was yelling and banging on the door of his cell. Sheriff Taylor sent Detention Deputy Shepherd to Walmart to purchase Duct Tape. Sheriff Taylor was going to duct tape Inmate Moore to a chair and take him out to an unsecured building, so that Moore would not disrupt the other inmates. Sheriff Taylor had Colby Police officers assist with moving Moore to the Lester Building. Being housed in the Lester Building would have given the inmate access to an assortment of tools that could have been used as weapons if he were able to free himself. Colby Police Officer Askren refused to assist Sheriff Taylor with duck taping Moore but did help cuff and leg iron Moore. Colby Police Chief Alexander confronted Sheriff Taylor and placed Moore back into the Thomas

County Jail. Sheriff Taylor threatened Moore with a noose. Moore complained to a judge about the threat from Sheriff Taylor when taken before the judge.

Deputy Staab was on a transport with Sheriff Taylor from Colby to Scott City. They went to pick up inmate Leanna Wendell and Kirt Dugger in order to bring them back to Colby. On the way back, Sheriff Taylor was showing his gold plated gun to Dugger while driving. Then by Oakley, he pulled a guy over in the Free Breakfast Inn because he looked suspicious. He took his gun out and was holding it in his hand, waving it around while there were two inmates in the car. Sheriff Taylor wanted to search the vehicle, but when the unknown male discussed consent to search, Sheriff Taylor let him go.

Sheriff Taylor's behavior is putting the public and fellow law enforcement officials in physical harm.

On several occasions, Sheriff Taylor has had his firearm fall out in dispatch and in the jail. Sheriff Taylor also has a habit of leaving his firearm in his vest and misplacing or forgetting where he leaves his vest and firearm. This puts officers and inmates safety at extreme risk during his lapses in judgment.

Approximately May 2015, Sheriff Taylor was in Walmart shopping, when a Walmart employee informed Sheriff Taylor that there was a guy threatening them. He claimed he had a gun and would shoot them. Sheriff Taylor called 911 and advised dispatch of the situation and to send an officer because he had forgotten his firearm in the vehicle. Sheriff Taylor confronted the suspect and a violent fight ensued. Sheriff Taylor had to seek medical attention after the suspect was transported to the Thomas County Jail.

July 2, 2015, Sheriff transported inmate Ryan White to the Scott County Jail. Approximately an hour later, Sheriff Taylor advised dispatch, via radio, to contact Scott County Jail and advise them that he was running late and that he had some errands to run before dropping off inmate White. It was later discovered that Sheriff Taylor had taken inmate White to his parents' house so he could visit them. They had also stopped to buy some chewing tobacco and cigarettes. This was a serious violation of officer safety and department protocols.

Kirt Dugger was arrested with other individuals and Sheriff Taylor ordered Dugger to be put in his office. He said he would watch him until the jail could book him. Sheriff Taylor had his duty weapon lying on the floor. Sheriff Taylor left Dugger in his office unattended and unsecured with the weapon still laying in plain view on the floor.

Sheriff Taylor has put male and female prisoners together in the bullpen and in detox. This is another blatant violation of accepted protocols and safety procedures.

Sheriff Taylor's disregard for the rule of law and procedure has put investigations and private property at risk.

On several occasions, Sheriff Taylor has thrown away evidence without disposal forms from the courts. This was done without the approval or knowledge of affected officers and without the proper adjudication from the court system. This clearly jeopardizes many ongoing cases.

08-21-2015 Sheriff Taylor stated that that the bank alarms needed to be checked at the Brewster Bank on Monday 08-24-2015, because they weren't working. This was all done over a non-secured radio channel that is open to the public.

Sheriff Taylor arrived at the scene of an accident involving a cattle truck, which was being worked by Trooper Medlicot. Sheriff Taylor started yelling at the Trooper to shoot the cattle, in order to block the rest of the cattle from escaping the trailer. Essentially he wanted expensive private property destroyed without being a threat to the motoring public.

Sheriff Taylor's professional conduct and attitude has eroded the moral and credibility of the Thomas County Sheriff's Office.

August 10, 2015, Sheriff Taylor had a meeting scheduled with the state custodian for juvenile reports at 0800. The custodian left after waiting until 0825. Sheriff Taylor had talked to Deputy Underwood and Deputy Staab before eight and had mentioned the meeting to both of them.

Sheriff Taylor has failed to show and attend numerous meetings with the county commissioners.

August 10, 2015, at approximately 0830, Sheriff Taylor advised Colby dispatch that he was responding to a rollover accident. Dispatch advised Taylor that it was not in Thomas County and that it was four miles north of Atwood. Sheriff Taylor advised dispatch that he was still going to go.

Sheriff Taylor has spent very little time at the Sheriff's Office in the past six years. When Sheriff Taylor does show up for work, he causes great tension and confusion amongst Sheriff's Office employees. He frequently losses his temper when questioned about his erratic decisions. Sheriff Taylor's actions are detrimental to the moral of the office. He is often seen wondering the halls of the Sheriff's Office aimlessly, as his focus is often lacking.

Sheriff Taylor does not believe he is accountable for his actions because he is an elected official. Sheriff Taylor on numerous occasions has shown a blatant disregard for the tax payers and citizens of Thomas County.

In a department meeting in November 2014, Sheriff Taylor advised the department that he was taking his wife Judy on a vacation to Dodge City. They went to the Sheriff's Conference and no training hours were turned in. Motel and meal expenses were charged to the county credit card. (Against county policy and clearly unauthorized purchases).

Sheriff Taylor on numerous occasions has had to reimburse Thomas County citizens for unauthorized and unjustified expenses he incurred on the County credit card.

Sheriff Taylor has had accidents in which he has failed to turn the accident into the Thomas County insurance. The vehicles either remained damage or are an additional expense take from the budget of the Sheriff.

Sheriff Taylor's actions and behavior are irrational and put the citizens of Thomas County at physical and financial at risk.

The events described in this letter and many additional incidents have been brought to the attention of the Thomas County Attorney, the Thomas County Commissioners, and state law enforcement officers. While everyone states something needs to be done, no action is being taken in an attempt to safe guard the citizens, employees, and Sheriff Taylor from himself. Sheriff Taylor through his own words and actions is using intimidation and threats to try and control the situation. I am looking for suggestions and or guidance on how to proceed. If warranted I am requesting an investigation into the incidents described and many more not listed.

Thank you for any assistance,


Marc Finley

Thomas County Undersheriff

FBINA Class 249