# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LANCE FINLEY,

    *Plaintiff,*

vs.

Case No. 17-1215-EFM

CITY OF COLBY, KANSAS and RON ALEXANDER,

    *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Lance Finley brings two claims, a First Amendment retaliation claim and a retaliatory discharge claim ("whistle blower" claim) under Kansas law against Defendants City of Colby, Kansas ("the City") and Ron Alexander. Defendants now seek summary judgment on Plaintiff's claims (Doc. 132). For the reasons stated in more detail below, the Court grants in part and denies in part Defendants' motion.

### I.    Factual and Procedural Background[1]

Plaintiff was hired by the Colby Police Department as a police officer in August of 2013. Defendant Ron Alexander became Chief of Police in the fall of 2013. Plaintiff received several evaluations throughout his employment.

---

[1] Only the uncontroverted facts are set forth, and they are set forth in the light most favorable to Plaintiff, the non-moving party.

On August 15, 2014, Plaintiff received an evaluation indicating that he received several "below standard" ratings. On May 26, 2015, Plaintiff was placed on probation beginning May 27, 2015 through August 15, 2015. The reasons for probation included: (1) supervisor contact on controlled buys, (2) narrative reports, (3) timeliness of reports-per County Attorney, (4) showing up for pass down, and (5) working with Corporal Steele on corrections to reports and improving on future reports. On June 10, 2015, Plaintiff was given a warning for failing to contact his supervisor. At the end of Plaintiff's probation in August, he was given an evaluation. He received five "below standard" ratings, and his probation was extended.

In September 2015, Plaintiff's brother, Marc Finley ("Marc"), sent a letter to the Thomas County Board of County Commissioners outlining misconduct by Sheriff Rod Taylor. Marc Finley was the Undersheriff of Thomas County, Kansas. In this letter, he outlined misconduct of Sheriff Taylor such as working under the influence of alcohol, getting into car accidents, cutting off the seatbelt of his county vehicle, soliciting sexual encounters from public employees and sexually harassing them, entering a private residence without a warrant, misconduct towards inmates, destroying evidence, and billing the county for conferences he did not attend. After Marc submitted this letter, Sheriff Taylor terminated Marc's employment.

On October 1, 2015, Plaintiff was again evaluated. His evaluation was generally favorable. Plaintiff was taken off probation, given a promotion, and a salary increase.

In November 2015, Plaintiff stopped Jim Cousins, an officer for the Thomas County Sheriff's Department. Plaintiff pulled him over because snow was almost completely covering Cousins' windshield. Chief Alexander instructed Plaintiff not to issue Cousins a ticket for the snow.

Tom Nickols became the Undersheriff of Thomas County, Kansas on December 1, 2015. This position was the one previously occupied by Plaintiff's brother, Marc Finley, until October 2015.

On January 15, 2016, Plaintiff was driving north on Kansas Highway 25. He was not on duty. A Thomas County Sheriff's patrol vehicle, driven by Cousins, was also traveling on Highway 25. Plaintiff recognized the patrol vehicle as the Thomas County Sheriff's vehicle previously operated by his brother Marc. Cousins was transporting a prisoner from Atwood to Colby.

Plaintiff and Cousins passed each other. Plaintiff called law enforcement after passing the vehicle. He told the dispatcher that the driver of a Thomas County Sheriff's vehicle "just went left of center and about ran me off the road." He also told the dispatcher that "it looks like he is running a hundred and twenty." Plaintiff stated again that the vehicle "just about f*cking hit me."

Plaintiff's dispatch call was transferred to Deputy Jake Cox. When Cox came on the line, Plaintiff told him that the vehicle was "running at least 90 plus" and "just about went head on with me." Plaintiff also told Cox that the vehicle came "clear left of center." Cox asked Plaintiff if he wanted to "sign a ticket?" Plaintiff told him to do "what you want" with the report. When Cox asked Plaintiff if he would rather Cox "just chew [Cousins'] ass," Plaintiff responded that he "might just say something to him."

After talking to Deputy Cox, Plaintiff tried to call Chief Alexander. There was no answer. Plaintiff then called County Attorney Kevin Berens. Later, Plaintiff sent Alexander the following text: "Hey for what it's worth Jim just went left of center and ran me off the road at county road w i [sic] realize nothing can be done but it was bad he went left of center I called Kevin and he said he would note it." Alexander's response was "k." After the text between Plaintiff and

Alexander on January 15, 2016, there was no further communication between them about it for approximately one month.

Cousins denies Plaintiff's allegations. There was a dashcam video in the Thomas County Sheriff's vehicle that Cousins was driving which recorded Cousins' entire trip from Colby to Atwood and back.[2] It also recorded when Plaintiff's and Cousins' vehicles passed each other. It is about 30 miles from Atwood to Colby. The speed limit on K-25 is 65 miles per hour. It took Cousins approximately 30 minutes to drive between Atwood and Colby.

The dashcam video does not show an excessive or extremely high rate of speed by the Thomas County Sheriff's vehicle. The video shows one location where Cousins went left of center to go around a semi on the shoulder with its flashers on, but there was no oncoming traffic. The dashcam video does not show Cousins coming left of center and almost hitting another vehicle.

Plaintiff testified that during the encounter on January 15, his vehicle went across the fog line on the side of the road. He stated that the ditches on the road are extremely deep. He also testified that his tires left the pavement during the encounter.

Sometime after January 15, 2016, one of Undersheriff Nickols' employees gave him the video dashcam. Nickols reviewed the entire video several times. He checked to see if Cousins stayed in his lane, and it did not appear to Nickols that Cousins went left of center or swerved at Plaintiff. Nickols perceived from the viewing of the video that Plaintiff's accusation was false.

In mid-February 2016, Nickols gave the dashcam video to Chief Alexander. When Alexander reviewed the video, he believed that it did not demonstrate that Cousins left the lane of traffic. Alexander testified that he believed Plaintiff was deceitful and that the video did not

---

[2] The dashcam video was provided to the Court for review.

demonstrate what Plaintiff stated had happened. Alexander had another officer review the video, who advised that he agreed with Alexander's assessment. However, another Colby Police Department officer testified that Chief Alexander admitted to him that the video was not conclusive as to whether Cousins' vehicle crossed the center lane.

Plaintiff met with Alexander on February 17, 2016. This meeting was the first time Alexander communicated with Plaintiff regarding Plaintiff's report about the operation of the Thomas County Sheriff's patrol vehicle on January 15, 2016. Prior to this meeting, Alexander had not criticized Plaintiff's report and Plaintiff did not know that a video existed of the encounter. Alexander informed Plaintiff that from his review of the dashcam video, he did not think that the Thomas County Sheriff's vehicle had come left of center. He offered Plaintiff a chance to resign. Plaintiff initially resigned. The next day, Plaintiff recanted his resignation. Plaintiff's separation was involuntary.

On February 17, 2016, Alexander informed Sheriff Nickols that Plaintiff's employment was over.[3] Alexander asked Nickols if he planned to go any further with the case. Nickols indicated that he would not be filing any case against Plaintiff. Former Thomas County Sheriff Rod Taylor's wife put an ad in the newspaper praising Finley's termination from the City of Colby.

Alexander testified that Plaintiff's termination was the culmination of issues including his probation, inappropriate handling of evidence, written warnings and problems on his written evaluations two years in a row, and the video. Alexander told Plaintiff that he could tell people he was no longer employed by the City of Colby because Alexander was a jerk or because of

---

[3] At some point, Taylor left the position of Sheriff of Thomas County, and Nickols became the Sheriff. The Court has not been provided with facts or details as to when this change occurred.

"politics." He told Plaintiff that he did not care what Plaintiff told people regarding why he no longer worked for the Colby Police Department.

Plaintiff filed suit in 2017. His claims include a First Amendment retaliation claim and a retaliatory discharge claim brought under Kansas law. Defendants now seek summary judgment.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[7] *Id.* (citing Fed. R. Civ. P. 56(e)).

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Analysis

**A.   First Amendment Retaliation Claim**

Plaintiff brings a First Amendment retaliation claim asserting that he was terminated when he engaged in constitutionally protected activity of making a report about Cousins' erratic driving. Defendants contend that Plaintiff cannot establish the essential elements of his claim. In addition, Defendant Alexander contends that he is entitled to qualified immunity.

*1.   First Amendment Retaliation*

A First Amendment retaliation claim requires a plaintiff to demonstrate that "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct."[10] The Court evaluates First Amendment retaliation claims in the employment context under the framework derived from the U.S. Supreme Court's decisions in *Garcetti v. Ceballos*[11] and *Pickering v. Board of Education*.[12] The *Garcetti/Pickering* test includes five elements:

1. The protected speech was not made pursuant to an employee's official duties.

2. The protected speech addressed a matter of public concern.

3. The government's interests as an employer did not outweigh the employee's free-speech interests.

4. The protected speech was a motivating factor in the adverse employment action.

---

[10] *Nielander v. Bd. of Cty. Commr's of Cty. of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009).

[11] 547 U.S. 410 (2006).

[12] 391 U.S. 563 (1968).

5. The defendant would not have made the same employment decision in the absence of the protected speech.[13]

Generally, the first three inquiries are questions of law for the Court, whereas the last two inquiries usually involve questions of fact for the jury.[14]

Defendants assert that, as a threshold issue, Plaintiff did not engage in constitutionally protected speech because Plaintiff's report was false. Defendants contend that the Court can conclude Plaintiff's statements were false because the Court has the dashcam video.[15] Plaintiff states that a reasonable factfinder could conclude that his report of Cousins' driving was substantially true or at least that there is a factual dispute about whether his report was substantially true.

A knowingly false or recklessly made false statement may not be protected by the First Amendment.[16] In this case, although a review of the dash cam video does not appear to support Plaintiff's statements to Alexander, the Court cannot conclude whether Plaintiff deliberately or recklessly made the false statement. Instead, this question is one for the jury to determine. Thus, there is a question of fact inappropriate for resolution on summary judgment as to whether Plaintiff

---

[13] *Lincoln v. Maketa*, 880 F.3d 533, 538 (10th Cir. 2018) (citation omitted).

[14] *Deutsch v. Jordan*, 618 F.3d 1093, 1098 (10th Cir. 2010).

[15] The Court notes that there are two separate pieces of evidence here. The dashcam video and Plaintiff's statement. Defendants are asking the Court to take the dashcam video as evidence of Plaintiff's deliberate or reckless false statement.

[16] *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1202 (10th Cir. 1998) (noting that "deliberately or recklessly false statements do not receive First Amendment protection" but that defendants had not shown that the plaintiff "knew or should have known his statements were false"), *abrogated in part on other grounds by Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001); *Moore v. City of Wynnewood*, 57 F.3d 924, 933 (10th Cir. 1995) (stating that "[w]e may assume that deliberately or recklessly false statements by public employees are either unprotected by the First Amendment or, at least, that such intentional falsity would weigh heavily against protection"); *Wulf v. City of Wichita*, 883 F.2d 842, 858 (10th Cir. 1989) (noting that some false statements may lose First Amendment protection if it was a knowingly or recklessly made false statement).

knowingly or deliberately made a false statement of law. This finding, in turn, affects the Court's analysis as to whether Plaintiff's report is constitutionally protected speech.[17]

Although this threshold issue impacts Plaintiff's claim, the Court must still briefly address certain contentions made by Defendants. Specifically, Defendants assert that Plaintiff cannot meet the first element of a First Amendment retaliation claim because his speech was related to his employment duties. They argue that although Plaintiff was off duty when he made the report of erratic driving, he still had a duty and responsibility, as an officer of the law, to report erratic driving. Plaintiff contends that he did not make the report pursuant to his official duties but instead as an off-duty citizen. Thus, he asserts that his report was not made pursuant to his official duties.

Whether an employee speaks pursuant to his official duties or as a private citizen is usually a question of law for the Court.[18] "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[19] The question is "whether the speech was made pursuant to the employee's job duties or, in other words, whether the speech was commissioned by the employer."[20] "There are no bright line rules to make this determination."[21] The Tenth Circuit takes a broad and practical view, and "[t]he guiding principle is that speech is made pursuant to official duties if it involves 'the type of activities that [the

---

[17] *See Deutsch*, 618 F.3d at 1098 (noting that the first three questions of law "may turn on resolution of a factual dispute by the jury").

[18] *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010).

[19] *Garcetti*, 547 U.S. at 421.

[20] *Reinhardt v. Albuquerque Pub. Schools Bd. of Educ.*, 595 F.3d 1126, 1136 (10th Cir. 2010) (quotation marks and citation omitted).

[21] *Chavez-Rodriguez*, 596 F.3d at 713.

employee] was paid to do.' "[22] However, "it would be going too far to hold that every time a public employee discovers alleged wrongdoing related to his job and brings it to the attention of law enforcement or other outside parties, the speech is unprotected."[23]

There are generally two factors to consider when determining whether an employee was speaking as a private citizen or pursuant to their job responsibilities. These include whether "(1) the employee's job responsibilities [related] to reporting wrongdoing and (2) the employee went outside the chain of command when reporting the wrongdoing."[24]

Here, Plaintiff, a City of Colby police officer, reported erratic driving by a Thomas County Sheriff's officer. Defendants provide Plaintiff's job description and assert that reporting public safety or traffic hazards is part of Plaintiff's essential duties. Generally, Plaintiff's responsibilities do relate to reporting wrongdoing. Plaintiff, however, was not on duty and was not performing his job when he made the report. He was off duty and driving his own vehicle. In addition, he was not reporting wrongdoing related to his job. Instead, he was reporting a Sheriff's officer's erratic driving. This scenario is a unique one that raises a question of fact as to whether Plaintiff was expected to report a traffic infraction while off duty. In sum, the Court finds that there is an underlying question of fact as to whether Plaintiff's employment duties required him to report wrongdoing while not on duty. Thus, this determination will need to be made by a jury, and the

---

[22] *Id.* (quoting *Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007)).

[23] *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008).

[24] *Reinhardt*, 595 F.3d at 1136 (citations omitted).

Court will then determine as a matter of law whether Plaintiff can meet the first element of his First Amendment retaliation claim.[25]

Defendants also contend that Plaintiff cannot meet elements two and three of his First Amendment retaliation claim because his report did not involve a matter of public concern and Defendants' interest in the efficiency of public service outweighed Plaintiff's free speech interest. The Court already addressed these contentions in the context of Defendants' motion to dismiss.[26] In that order, the Court found that Plaintiff's report touched on a matter of public concern and that Defendants' interests did not outweigh Plaintiff's interests. Defendants do not direct the Court to any additional evidence that would disturb the Court's previous findings.

Finally, Defendants assert that Plaintiff cannot establish that his protected speech was a motivating factor in his termination. This question is generally a factual one, and it is in this case too. Plaintiff's report played a part in his termination, but there is a factual question whether Plaintiff made the report deliberately and recklessly. That conclusion will impact whether Plaintiff engaged in protected speech. If Plaintiff's report is not protected speech, it will not matter whether the report played a part in his termination.

There are several genuine issues of material fact relating to Plaintiff' First Amendment retaliation claim. Thus, the Court denies Defendants' motion for summary judgment on this claim.

   2.    *Qualified Immunity*

---

[25] As noted above, although the first three elements of a First Amendment retaliation claim are generally questions of law, factual disputes may preclude that resolution. *See Deutsch*, 618 F.3d at 1098 (noting that the first three questions of law "may turn on resolution of a factual dispute by the jury").

[26] Doc. 65.

Defendant Alexander also asserts that he is entitled to qualified immunity. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law."[27] The doctrine precludes this Court from awarding "damages against a government official in his personal capacity unless the official violated a statutory or constitutional right, and the right was clearly established at the time of the challenged conduct."[28]

Defendant contends that Plaintiff cannot demonstrate a violation of a federal right or that the right was clearly established. Defendant previously asserted both arguments in his motion to dismiss. At that time, the Court found that it was clearly established that a law enforcement officer could not be discharged for reporting a high-ranking law enforcement official's suspected illegal activity.[29] Nothing has changed to alter the Court's previous ruling. As to whether Chief Alexander's actions violated a constitutional right, there remains a question of fact as to whether Plaintiff's report constitutes protected activity. Thus, there is a question of fact on the first prong on whether a federal right was violated. Accordingly, the Court denies Defendant's request for summary judgment on qualified immunity.

**B.   Kansas Retaliatory Discharge Claim**

Plaintiff also brings a claim for retaliatory discharge under Kansas law. He claims that he was discharged in retaliation for making the report ("whistleblowing) about Cousins' driving. In

---

[27] *Knopf v. Williams*, 884 F.3d 939, 943-44 (10th Cir. 2018) (quotation omitted).

[28] *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quotation marks and citation omitted).

[29] Doc. 65.

addition, he asserts that Defendants retaliatorily discharged him because of his brother Marc's report ("whistleblowing") about the Thomas County Sheriff's Department.

 1. *Plaintiff's Own Report*

Generally, employment is at-will in Kansas, and an employer can terminate an employee for any reason at any time.[30] There are certain exceptions to this doctrine, including a prohibition on retaliatory discharge for "whistleblowing."[31] A retaliatory discharge claim based on whistleblowing requires a plaintiff to demonstrate by clear and convincing evidence that

> [A] reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report.[32]

With regard to Plaintiff's report about Cousins' driving, Defendants assert that Plaintiff cannot meet the first element because he was not reporting a co-worker or employer engaged in a violation of the law. The undisputed facts demonstrate that Plaintiff worked for the City of Colby for the Colby Police Department. Plaintiff's report on erratic driving involved an employee of the Thomas County Sheriff's Department, a separate entity and organization than the Colby Police Department. Plaintiff argues that although Cousins was not a fellow employee, he was a co-worker because they are both in law enforcement and thus his report constituted whistleblowing. Plaintiff provides no legal authority for the proposition that employees of different employers may be considered "co-workers" simply because these individuals perform similar work.

---

[30] *Hill v. State*, 310 Kan. 490, 448 P.3d 457, 500 (2019) (citation omitted).

[31] *Id.* at 500-01.

[32] *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685, 690 (1988).

Plaintiff also argues that Defendants assert the Colby Police Department and the Thomas County Sheriff's Department are agencies with a close working relationship and that demonstrates that he and Cousins' were co-workers. The Court disagrees. Again, Plaintiff does not cite to any law that a close working relationship between separate agencies with no authority over the other suffices to establish a co-worker or fellow employee relationship to support a retaliatory discharge claim. Here, Plaintiff's report did not involve a co-worker as that term is generally understood. Thus, Plaintiff cannot meet an essential element of a retaliatory discharge claim.

2. *Plaintiff's Brother's Report*

In addition, Plaintiff contends that Defendants retaliated against him because of his brother Marc's report about Sheriff Taylor. Defendants assert that Plaintiff is not entitled to protection based on the activities of his family. Plaintiff asserts that Kansas extends whistleblower protection to siblings of those who engage in protected activity. Although Plaintiff cites to a District of Kansas case for that proposition, it is not applicable here.

In *Thummel v. PSI Transport, LLC*,[33] the District of Kansas declined to dismiss a retaliatory discharge claim finding that "firing a close family member, specifically a sibling, in retaliation for filing a [] complaint is sufficient to state a claim of retaliatory discharge."[34] In *Thummel*, however, both siblings were employed by the same employer.[35] Specifically, the plaintiff was the office manager, and her brother worked as a mechanic and the shop manager.[36] The plaintiff's brother

---

[33] 2015 WL 475183 (D. Kan. 2015).

[34] *Id.* at *3.

[35] *Id.* at *1.

[36] *Id.*

filed a complaint with Occupational Safety and Health Administration ("OSHA") about safety violations committed by the defendant (the employer) who employed both siblings.[37] The defendant employer then fired the plaintiff based on her brother's report.[38]

Here, the facts are not analogous. Plaintiff and his brother were not employed by the same employer. Plaintiff worked for the City of Colby while Marc worked for the Thomas County Sheriff's Department. Marc complained about incidents happening within the Sheriff's Department. He did not complain about incidents occurring within the Colby Police Department nor did he complain about any action by the named Defendants in this case. Plaintiff was terminated by the City of Colby, and the Thomas County Sheriff's Department had no authority over Plaintiff's employment. Plaintiff attempts to assert a retaliatory discharge claim based on the activities of his brother who reported on an agency who does and did not employ Plaintiff and had no authority over Plaintiff's employment. Thus, Plaintiff fails to adequately allege essential elements of retaliatory discharge based on whistleblowing activities. Accordingly, the Court grants Defendants summary judgment on Plaintiff's state law retaliatory discharge claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 132) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion for summary judgment on the First Amendment retaliation claim and qualified immunity is denied. Defendants' motion for summary judgment on the state law retaliatory discharge claim is granted.

---

[37] *Id.*

[38] *Id.*

**IT IS SO ORDERED**.

Dated this 1st day of April, 2020.

                                                  ERIC F. MELGREN
                                                  UNITED STATES DISTRICT JUDGE